ELIZABETH K. SHERWOOD v. THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY.

*Negligence—Railroad companies—Damages—Injury to passenger alighting from train—Charge to jury—Special questions.*

1. It is error to refuse to submit to the jury special questions, unambiguous in form, and relating to a question of fact in issue;[1] citing *Harrison v. Railroad Co.,* 79 Mich. 409.

[1] See *Balch v. Railroad Co.,* 78 Mich. 654.

2. A request for an instruction "that the running of a railroad train beyond the usual stopping place at the station before coming to a stand-still is not in *itself* negligence, nor is the pause after it is brought to a stop, for a period necessary to reverse the motion so as to back to the usual stopping place, negligence," is properly modified by adding, "unless the stop is so made and for such a length of time as to indicate that it is an invitation to passengers to alight, and the movement backward is made without warning while they are alighting in response to such invitation."

3. The charge in this case as to the measure of damages (see opinion, p. 383) is fully supported by *Power v. Harlow*, 57 Mich. 116; *Geveke v. Railroad Company*, Id. 596.

4. A plaintiff in a negligence case is entitled to recover, as a part of his damages, his reasonable and necessary outlays in an attempt to be cured of the injuries resulting from the negligence of the defendant.

Error to Kent. (Grove, J.) Argued June 10 and 11, 1890. Decided October 10, 1890.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin (M. J. Smiley, of counsel),* for appellant.

*Fletcher & Wanty (R. M. Montgomery, of counsel),* for plaintiff.

LONG, J. On September 4, 1888, plaintiff was a passenger on defendant's road from Benton Harbor to Watervliet, and, in alighting from the train at her destination, was seriously and permanently injured, as she claims, through the negligence of defendant's servants. This action was brought in the Kent circuit court, where, on a trial before a jury, the plaintiff was awarded a verdict and judgment for $13,388.88. Defendant brings error.

On the trial in the court below, the plaintiff's claim was that, when the train reached Watervliet, the name of the station was called by one of the trainmen; that

the train came to a full stop; that she arose from her seat, went forward upon the platform, and down upon the steps of the car, and was in the act of stepping off upon the depot platform when the train, without any warning, suddenly started backward, throwing her down, and breaking her hip; that, before she got off, the conductor at one of the platforms had assisted several passengers off, and every one aboard the train, except the engineer and fireman, supposed the regular stop had been made, and that all the passengers for that point were expected to alight.

On the part of defendant company, it is admitted that the train came to a full stop, but that the engine had gone by the water tank where they expected to take water, and that the engineer backed the train as quickly as he could operate the engine. The defendant claimed further, and introduced testimony tending to show, that the train on which the plaintiff was a passenger always stopped at the stand-pipe for water; that, as the engineer passed the stand-pipe on that occasion, he reversed his engine and released the brakes so that when the train stopped it would back up immediately; that it was impossible at all times to stop at the immediate point of taking water, and, in the event of running past the point a short distance, the usual and proper course is to back up immediately.

It appeared from the testimony of some of the witnesses that they were standing in the aisle and on the platform of the car at the time the train was moved back, and did not notice the change in motion, or that the train was in motion, until after they had alighted, or had seen the station lights at the depot. Testimony was given by Dr. Stratton and Mr. Lyon that they occupied seats in the chair-car, the one in the rear of the one in which plaintiff was riding; that they got off from the front

end of that car, and walked in the direction of the rear of the train 25 or 30 feet, when their attention was attracted to the fall of the plaintiff; that they turned and walked back about 10 feet to where she had fallen. It was claimed from this and other evidence that the train was moving backward when the plaintiff attempted to alight, and, in fact, had moved back a car-length when she fell.

The cause was submitted to the jury upon the theory of both the plaintiff and defendant. With their general verdict they returned special findings, which were submitted, as follows:

"1. Did the plaintiff, on the occasion in question, attempt to alight from the front end of the car in which she had been riding?

"A. Yes.

"2. Did the bell on the locomotive continue to ring until the final stop had been made?

"A. Yes."

Defendant, by its counsel, submitted the following questions for special findings, which the court refused to submit to the jury:

"1. Did the witnesses Dr. Stratton and Mr. Lyon alight from the front end of the chair-car of the train in question?

"2. Had they walked in the direction of the rear of the train a distance of about 25 or 30 feet, when their attention was attracted by the fall of the plaintiff?

"3. When the attention of the witnesses Stratton and Lyon was attracted by the fall of the plaintiff, did they return to where she had fallen, and reach the plaintiff in walking a distance of about 10 or 15 feet?"

It is contended here by counsel for defendant that these were proper questions to be submitted, and upon which they had a right to a finding by the jury. The argument made in favor of this contention is that the length of time the train remained at a stand-still was of import-

ance, inasmuch as their contention was that the train was moving backward, and had actually moved one car-length, at the time the plaintiff attempted to alight, while the plaintiff contended that the train had come to a full stop for the purpose of allowing passengers to alight, and she, seeing others alighting, or about to alight, undertook to get off, and just as she was stepping from the car to the platform the train was suddenly started back, and she was thrown upon the platform, and injured. Counsel for defendant contend that if these questions had been answered in the affirmative by the jury their general verdict could not stand, as such answers would have been a finding, in effect, that the plaintiff was injured through her own negligence in attempting to step off while the train was in motion; for that if Dr. Stratton and Mr. Lyon got off the front end of the car next back, and then walked towards the rear of the train 25 or 30 feet, and, turning around upon seeing plaintiff fall, they reached her by going forward again only 10 feet, it would be a self-evident proposition that the plaintiff did not attempt to get off and step down while the train was at a stand-still, but rather while it was in motion, and had backed nearly a car-length.

The court was in error in refusing to submit these special questions to the jury. They are plain and unambiguous. They call for findings upon questions of fact. Testimony was given upon the trial tending to support the theory of the defendant that the plaintiff alighted from the train while it was yet in motion. The special questions point to a direct finding upon that branch of the case. Whether or not the plaintiff did alight while the train was in motion was a question of fact for the jury, and upon which the defendant had the right to a special finding. The questions presented the main issue in the case. While the court in its general charge very

fairly presented the defendant's theory upon this branch of the case, yet the statute gives the right to either party upon the trial to present questions of fact for the finding of the jury, and, if the questions propounded are presented in unambiguous form, and relate to the questions of fact in issue, the court has no right to ignore them. *Harrison v. Railroad Co.*, 79 Mich. 409.

The court instructed the jury as follows:

"If the jury find that, at the time of the accident, the servants of the defendant brought the train into the station in the usual way, but that, not being able to stop the train at the usual place, it ran by a short distance, and that the engineer reversed his engine and caused the train to back up to the proper place at the station without delay, and as quickly as it could be done, and that this was the usual, customary, and proper way of operating the train, then the defendant would not be guilty of negligence for operating the train in that manner, unless that the stop referred to was so made and for such a length of time as to indicate that it was an invitation to passengers to alight, and the movement backward was made without warning while the plaintiff was in the act of alighting in response to such invitation.

"If the plaintiff, with the mistaken belief, at the time she arose from her seat for the purpose of leaving the train in question, that it had come to a stop for the purpose of enabling passengers to alight, when in fact the train had not come to a stop, but was running so smoothly and noiselessly that the passengers could only distinguish it by comparison with standing objects; that it ran past the usual stopping place a short distance, when its motion was instantaneously reversed, but so noiselessly and smoothly that the passengers standing in the aisles or on the platform on the cars could not and did not distinguish the stopping or change in motion; and while in such backward motion the plaintiff, seeing other passengers alighting, or preparing to alight, supposing the train had actually halted for the purpose of enabling the passengers to alight therefrom, attempted to alight therefrom before the train had halted in its backward movement, and was thereby injured,—then the acts of negligence alleged against the defendant in plaintiff's declaration have not

been established, and your verdict should be for the defendant."

It is contended further by defendant's counsel that the court was in error in refusing to give the following requests to charge:

"9. The running of a railroad train beyond the usual stopping place at the station before coming to a standstill is not negligence *per se* or as a matter of law, nor is the pause after it was brought to a stop, for a period necessary to reverse the motion so as to back it to its usual stopping place, negligence.

"10. If the jury find that, at the time of the accident, the servants of the defendant brought the train into the station in the usual way, but that, not being able to stop the train at the usual place, it ran by a short distance, and that the engineer reversed his engine and caused the train to back up to the proper place at the station without delay and as quickly as it could be done, and that this was the usual, customary, and proper way of operating the train, then the defendant would not be guilty of negligence for operating the train in that manner.

"11. It is shown in the case, by evidence which is undisputed, that it is the proper and usual way in managing a train, in case it runs past the usual stopping place, to immediately reverse the engine, and bring the train to its proper place, and the jury would not be justified in disregarding said evidence, or in coming to a different conclusion in that regard upon their own ideas of the proper and judicious management of the train.

"12. It appears from the testimony that it was dark, or becoming dark, at the time of the accident; that neither the defendant nor the conductor or brakeman knew that the train had run past the usual stopping place at the station, or that it was necessary to back up to get the train in proper place. If the jury find this to be the case, then the defendant is not liable for negligence because the plaintiff alighted and was injured while the train was being backed to its proper position.

"13. The plaintiff cannot recover in this action under the declaration in this case, there being a variance between the plaintiff's allegations in her declaration and the proofs offered on the trial.

" 14. The plaintiff cannot recover in this cause under her declaration, because there is a variance between the allegations of said declaration and the proof offered on the trial, in that the declaration alleges that the plaintiff broke her leg, whereas the proof is that the injury was to her hip.

"15. The plaintiff cannot recover under her declaration in this case, because there is variance between the allegations of her declaration and the proof offered on the trial, in that it is alleged that, when the plaintiff was about to alight from the train, the defendant caused the train to be suddenly and violently started and moved, and that the plaintiff was thereby, with great force and violence, thrown from and off the train to the ground, whereas there is no evidence in the case to sustain said allegation."

The ninth and tenth requests were substantially given as asked. The court stated to the jury:

" Railway companies are not insurers of the safety of their passengers. They are only liable when there has been actual negligence of themselves or their servants. The running of a railway train beyond the usual stopping place at the station before coming to a stand-still is not of itself negligence, or not negligence as a matter of law; nor is the pause after it is brought to a stop, for a period necessary to reverse the motion so as to back it to the usual stopping place, negligence, *unless the stop is so made and for such a length of time as to indicate that it is an invitation to passengers to alight, and the movement backward is made without warning while they are alighting in response to such invitation.*"

The words in italics, however, were added by the court. It is evident that these requests were extracted from the opinion of Mr. Justice Andrews in *Taber v. Railroad Co.*, 71 N. Y. 492. In that case it was further said by the learned justice:

" But the fact that the train over-shot the station, rendering it necessary after it came to a stand-still to start it back to the usual stopping place, in connection with the other circumstances, made it a question for the jury whether, in the exercise of reasonable care and prudence, the defendant should not have given notice to pas-

sengers desiring to alight at the station that the train had not come to a final stop, and that it would back up."

The modification, therefore, made by the trial judge, left the question as one of fact for the jury, whether the circumstances warranted the engineer in backing his train without notice to those alighting. There was no error in this modification. From the plaintiff's testimony, the jury might well, under the circumstances, say that she was free from negligence in attempting to alight as she did. The defendant was bound to take notice, under the circumstances stated, that the passengers would attempt to alight, and, if the stop was of sufficient length of time to allow it, some of them would be in the act of alighting when the train started back. If, therefore, the stop was of such duration, it would be negligent in starting back without some warning. *Wood v. Railway Co.,* 49 Mich. 372 (13 N. W. Rep. 779); *Stone v. Railway Co.,* 66 Id. 77 (33 N. W. Rep. 24). The question was fairly submitted to the jury.

In *Keating v. Railroad Co.,* 49 N. Y. 673, it appears that plaintiff attempted to get upon a train at the station at Niagara Falls. The train was standing still, partly filled with passengers. As the plaintiff stepped upon the steps of the car, the train, without any signal or notice, and without any examination by those in charge to ascertain whether any one was getting on or off, was started with a violent jerk, which threw plaintiff from the car. It was held that the question of negligence was for the jury. This rule is also laid down in *Van Horn v. Railroad Co.,* 38 N. J. Law, 133; *Railroad Co. v. Kilgore,* 32 Penn. St. 292.

The questions raised under the remaining requests relate to the variance between the declaration and the proofs. There is no such variance as claimed, and the

question need not be discussed. The court properly refused the requests.

Some question is made upon the charge of the court relative to the measure of damages. But, as it was said by plaintiff's counsel upon the argument here, a reading of that portion of the charges is the only answer necessary to refute the claims of error. The court charged upon that branch of the case as follows:

"In this action, which is a single wrongful act, the plaintiff, if she has shown herself entitled to recover, is entitled to recover all damages which she has suffered up to the time of the trial, and for all damages which 'it is reasonably probable that she will sustain in the future, not exceeding, in all, the amount claimed in the declaration, and that has been stated to be $20,000.

"In estimating the compensatory damages in cases of this character, all the consequences of the injury, future as well as past, are to be taken into consideration, including the bodily pain which is shown by the proof to be reasonably certain to have naturally resulted from the injury. The injured party, when entitled to recover, should be awarded compensation for all the injuries, past and prospective. These are intended to include and embrace indemnity for actual nursing and medical expenses; also for loss of power, or loss of capability to perform ordinary labor, or capacity to earn money, and reasonable satisfaction for loss of physical powers. The elements of damages which the jury are entitled to take into account consist of all effects of the injury complained of, consisting of personal inconvenience, the sickness which the plaintiff endured, the loss of time, all bodily and mental suffering, impairment of capacity to earn money, the pecuniary expenses, the disfigurement or permanent annoyance which is liable to be caused by the deformity resulting from the injury; and, in considering what would be a just sum in compensation for the sufferings or injury, the jury are not only at liberty to consider the bodily pain, but the mental suffering, anxiety, suspense, and fright may be treated as elements of the injury for which damages, by way of compensation, should be allowed. And as these last-mentioned elements of damage are, in

their very nature, not susceptible of any precise or exact computation, the determination of the amount is committed to the judgment and good sense of the jury. And if you find for the plaintiff, such sum should be awarded as will fairly and fully compensate her for all damages which she has sustained consisting of the elements referred to, not exceeding in amount the sum claimed in the declaration."

We see no error in this charge. It is fully supported by the rulings of this Court in *Geveke v. Railroad Co.*, 57 Mich. 596 (24 N. W. Rep. 678); *Power v. Harlow*, Id. 116 (23 N. W. Rep. 610).

It is further contended that the court erred in permitting the plaintiff to testify as to the costs and expense of her trip to La Porte, Ind., and the medical treatment which was given her at the time of her attendance there. The reason of this objection, stated by counsel, is that this treatment was not necessary or usual for an injury of this kind, and that, by permitting this testimony, the court allowed the jury to charge the defendant with the entire expenses of the trip, her board and medical treatment from December 5 until May 28, following, at the rate of $21.50 per week, including the board of her sister. There was evidence tending to show that the injuries which she received resulted in produced atrophy of the muscles, and it was thought by her physicians that the electrical treatment which would be given at La Porte might relieve that difficulty. It appeared that the injury was in the thigh, and the indications of the injury, as testified by Dr. Lawrence, were that of an intra-capsular fracture, causing a shortening of the limb and atrophy of the muscles. The plaintiff suggested going to La Porte, and Dr. Lawrence told her it would be a good idea, and that it might improve her general health, and indirectly help the health of the muscles. It appears that

she was suffering at that time to such an extent from these injuries that she was bedridden, and her general health greatly impaired. She went to La Porte and took this treatment. Her health and general condition was such that an attendant, or nurse, was necessary. She was entitled, as a part of her damages, to recover whatever was a reasonable and necessary outlay in her attempt to be cured of the injuries resulting from the negligence of the defendant. It cannot be said, under the circumstances, that this was an unreasonable expenditure. The testimony was properly received. The plaintiff, as it appears, is permanently crippled, and compelled to use a cane or crutch to get about with, or to depend upon some one to assist her.

For the error pointed out, the judgment of the court below must be reversed, with costs, and a new trial ordered.[1]

The other Justices concurred.

—————————◇—————————

| 82 | 385 |
| 93 | 294 |
| 94 | 385 |
| 82 | 385 |
| 104 | 127 |

_____

[1] On a second trial plaintiff recovered a verdict of $15,000.