## GILBERT v. STICKLEY.

1. MASTER AND SERVANT—CONTRACTS—TRIAL—EVIDENCE — BURDEN OF PROOF—QUESTION FOR JURY.
   In an action for breach of contract of employment, where plaintiff's claim was contradicted by defendant, there being only the two witnesses, whether plaintiff has sustained the burden of proof, *held*, a question for the jury.

2. TRIAL—SPECIAL QUESTIONS—CONCLUSIVENESS.
   It was not error for the court below to refuse to submit special questions which were not plain and unambiguous and not conclusive of the real issue involved.

3. SAME—BASED UPON FACTS.
   A special question not based upon the claimed facts in the case was properly refused.

4. SAME—EVIDENCE—QUESTION FOR JURY.
   Contradictory testimony as to whether certain stock, promised to plaintiff by defendant, was to be charged to expense account when issued or was to be paid for out of dividends, presented a question for the jury.

Error to Kent; Brown, J.  Submitted October 24, 1918.  (Docket No. 43.)  Decided December 27, 1918. Rehearing denied May 1, 1919.

Assumpsit by Andrew J. Gilbert against Albert Stickley for breach of a contract of employment. Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Francis D. Campau,* for appellant.

*H. Monroe Dunham* (*Joseph T. Riley,* of counsel), for appellee.

KUHN, J.  This action is brought to recover damages which the plaintiff claims to have sustained by reason of a breach of contract on the part of the defendant.  On or about October 12, 1915, the defendant, Albert Stickley, was the controlling owner of the Gogebic Lumber Company, at Pentoga, Michigan.  At about that time he entered into an arrangement with one Montambo, who owned a logging equipment and a mill, to begin logging operations on a tract of land owned by the Gogebic Lumber Company.  Plaintiff was at that time an office employee of Stickley Brothers Company, in which the defendant, Albert Stickley, also owned a controlling interest.  Messrs. Stickley and Montambo made an arrangement to organize as a company, to be known as the Presque Isle Lumber Company, an operating company, which was to get logs from the Gogebic Lumber Company at a stumpage rate, and manufacture lumber.  The company was organized on December 13, 1915, with three stockholders, with a capital stock of $100,000; $25,000 of this stock was taken by Mr. Montambo, $25,000 by Mr. Stickley, and one share was given to plaintiff as the third incorporator.  Plaintiff was elected secretary of the company and went to Pentoga and there assumed the office management of the Presque Isle

Lumber Company, Mr. Montambo being the practical operator in the woods. The operations of the company were closed about the middle of January, and the plaintiff remained at Pentoga, closing up the affairs of the company, until February 16th, when he returned to Grand Rapids, Michigan, and was employed in the office of Stickley Brothers Company for the month of February, and about the first of March he was notified by the defendant here that his services would be no longer needed. He was paid up to the first of March. It is the plaintiff's claim that on the 12th of December, 1915, the day before the organization of the company, the defendant personally, at the office of the Presque Isle Lumber Company, made an arrangement with the plaintiff by which it was agreed that the plaintiff was to have a salary of $3,000 in cash for the period from December 12, 1915, to December 1, 1916, and, in addition, was to receive from the defendant $5,000 worth of the stock of the Presque Isle Lumber Company. From the time the plaintiff left the Stickley Brothers Company, in October, 1915, and went to Pentoga, he received a salary of $250 a month on checks of Stickley Brothers Company, which money was charged to the account of the defendant, and the defendant continued to pay the salary of $250 a month to the plaintiff from October, 1915, until plaintiff was informed by the defendant, on March 1, 1916, that there was no further work for him. Five thousand dollars of the stock of the Presque Isle Lumber Company was never delivered to the plaintiff, and he claims to have been unable to obtain employment from March 1st until December 1, 1916, and for claimed damages thus resulting, this suit was brought and resulted in a verdict for the plaintiff in the sum of $2,383.75.

The first claim here urged by defendant's counsel is that the court, as a matter of law, should have

directed a verdict for the defendant because the plaintiff has not sustained the burden of proving by the preponderance of evidence an affirmative case against the defendant. The claim of the plaintiff as to the agreement was contradicted by the defendant, and there were only the two witnesses. The defendant claimed that with reference to this contract, he was acting for the Presque Isle Lumber Company, but in view of the fact that plaintiff's name was never on the pay-roll of the Presque Isle Lumber Company and that he was actually paid up to March 1, 1916, either by check of Albert Stickley or by check of Stickley Brothers Company, which was charged to Stickley, the question of fact raised by the dispute in the testimony, in our opinion, was fairly a question for the jury to determine.

At the close of the testimony, counsel for defendant requested the court to submit to the jury the following three special questions:

"1. Was the salary of the office manager and secretary of the Presque Isle Lumber Company to be paid by Albert Stickley personally?

"2. Was the salary of the secretary and office manager of the Presque Isle Lumber Company, including the stock, to be paid from the earnings of the company?

"3. Was there any other service on the part of A. J. Gilbert in the minds of the parties on December 12th than his service with the Presque Isle Lumber Company?"

The court refused to submit these questions. In order that questions of this kind can, under the decisions of this court, be submitted to the jury, they must be plain and unambiguous and call for findings on questions of fact which are conclusive of the real issue involved in the case. See section 12611, 3 Comp. Laws 1915; *Crane* v. *Reeder*, 25 Mich. 303; *Fowler* v. *Hoffman*, 31 Mich. 215; *Foster* v. *Gaffield*, 34 Mich.

356; *Sherwood* v. *Railway Co.*, 82 Mich. 374; *Zucker* v. *Karpeles,* 88 Mich. 413; *Cousins* v. *Railway Co.*, 96 Mich. 386; *Ward* v. *Campau,* 161 Mich. 85; *Keeley* v. *Stratton,* 185 Mich. 409. Upon examination of these questions, we are of the opinion that the court was justified in not submitting them, because they were not so clear and unambiguous as to warrant their submission to the jury. It is not clear in the first question whether the word "salary," as referred to in the question, was to include, not only the $3,000 in cash, but also the stock issue, and both of these items of plaintiff's claim were submitted to the jury under proper instructions. The second question is also subject to the infirmity that it is not based upon the claimed facts in the case, because, as we understand the defendant's claim, it is not urged that the salary, that is, the $3,000 cash, was to be paid out of the earnings of the company, although it is claimed by the defendant that the stock was to be paid out of such earnings. A decision of the third question would also not be conclusive of the question here involved. We therefore find no merit in the appellant's contention that the court erred in not submitting these questions.

Defendant's fourth request to charge reads as follows:

"4. The undisputed testimony shows that the $5,000 stock in the Presque Isle Lumber Company was not to be furnished from the stock held by Mr. Stickley nor to be purchased for the plaintiff by the defendant, but was to be set apart by the company to be paid for by the earnings of the company, and therefore as to the portion of the claim that relates to the $5,000 stock you will find for the defendant, no cause of action."

The court's refusal to give this charge as requested is next alleged as error. An examination of the testimony of the plaintiff is rather confusing as to what

his real idea was as to this $5,000 of stock. While on direct examination he did testify that the stock was to be paid out of the earnings of the company, later on in his examination he stated that under the ordinary course of accounting, when this stock was issued, it would be charged to an expense account, which would be treated as any other expense account and deducted from the gross earnings in computing the earnings for a given period, and that it was not his understanding that the stock was to be paid out of dividends earned. We are of the opinion that there was sufficient dispute as to this claim in the testimony as to present a question of fact for the jury, and that therefore the court did not err in refusing to give the request as presented.

We are unable to find any error, and therefore feel constrained to affirm the judgment.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.