### MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N, Appellant,

v.

### Alexander Hendrix ROWELL, Appellee.

No. 5–3013.

Supreme Court of Arkansas.

June 3, 1963.

Barber, Henry, Thurman & McCaskill, Little Rock, John Harris Jones, Pine Bluff, for appellant.

Jay W. Dickey, Pine Bluff, for appellee.

McFADDIN, Justice.

The appellant insists that there was no sufficient evidence offered by appellee to take this case to the jury. In 1949 appellant, Mutual Benefit Health & Accident Association of Omaha, Nebraska (hereinafter called "Mutual"), for value received, issued to the appellee, Hendrix Rowell, then 41 years of age and a practicing attorney, two policies of insurance, the pertinent provisions of which will be subsequently discussed; and Mr. Rowell regularly paid all premiums due on the policies and was at all times well and active until June 1958. One morning when he attempted to arise from his bed his right leg and arm gave way because of numbness, which gradually disappeared in the course of the day; but the next morning the same thing occurred.

Mr. Rowell consulted several neurosurgeons, and was advised that he had hardening of the arteries and arteriosclerosis of the brain; that nothing was mentally wrong; that if he continued his work as a lawyer the stress and strain could cause paralysis or death; that he should retire from the law practice and all other business activities; that he should get plenty of sleep and rest; that he should not drive an automobile, but could take rides with a driver; and that he was to have regular monthly examinations. All of this was in June 1958; and Mr. Rowell assiduously followed the instructions and directions of his physicians. He filed claim with Mutual on the two policies herein on the basis of total permanent disability, and each month sent a doctor's report; and Mutual made regular monthly payments of $500.00 on the two policies. These payments began on July 23, 1958, and continued regularly each month until April 23, 1961, when all payments were discontinued.

In September 1961 Mr. Rowell filed the present action for the monthly payments delinquent since April 1961. The defenses of Mutual were: (a) that Mr. Rowell's disability was due to "mental infirmity," which was excepted from the policy coverage; and (b) that Mr. Rowell was not "continuously confined indoors," which was a policy requirement. Trial of the case to a jury resulted in a verdict and judgment for Mr. Rowell for past due payments, penalty, and interest; and Mutual brings this appeal, urging the points now to be discussed.

I. *Mental Infirmity.* Mutual insists that it was entitled to an instructed verdict because—as it says—all the evidence shows that Mr. Rowell's disability was due to

"mental infirmity." The insuring clause of each policy contained this language:

"(b) the term, such sickness, as used in this policy, shall mean sickness, the cause of which originates while this policy is in force and more than thirty days after the Policy Date * * * but shall not include * * * mental infirmity * * *."

The Trial Court gave its Instruction No. 1, which is not here claimed to be erroneous, and which reads:

"It is stipulated that Hendrix Rowell, plaintiff in this case, is totally disabled to practice law. You shall find for the plaintiff, Hendrix Rowell, unless you further find, as defined by these instructions, that his disability is the result of mental infirmity or that he was not continuously confined, according to other instructions defining said continuous confinement, or was not regularly attended by a licensed physician, as defined by these instructions."[1]

■ Mutual insists that the hardening of the arteries of the brain was a "mental infirmity"; and to sustain its argument on this point, Mutual cites and relies on, *inter alia,* the following cases: Grabove v. Mutual Benefit, 241 Ala. 88, 1 So.2d 297; Moss v. Mutual Benefit, 89 Utah 1, 56 P.2d 1351; and Lyle v. Reliance Life Ins. Co., 197 Ark. 737, 124 S.W.2d 958. We find these cases to contain factual situations entirely dissimilar from those in the case at bar, and we consider them of no application. Even though the burden of proof in this case was on Mutual to establish, by a preponderance of the evidence, its claim of

mental infirmity, nevertheless, here is some of the evidence on behalf of Mr. Rowell which we think had directed bearing on this matter of "mental infirmity." Dr. R. E. Semmes, a recognized neurosurgeon, testified that he examined Mr. Rowell in 1958 and at subsequent times:

"There was no evidence of tumor, clots and so forth. In the absence of any pressure signs to indicate obstructive hydrocephalus, that would be called the dilution of the brain to get larger, the destruction was from degeneration, we can conclude the atrophy was on the basis of loss of circulation of the brain, a diminished circulation; that this in turn was probably due to hardening of the arteries. * * * On examination there was a fine tremor of the right hand. There was no neurological deficit. There was some local vessel involvement in·his right leg but no true imbalance. Cranial nerves were all intact. Examination of the eye-grounds showed arteriosclerosis of the retinal vessels but no pressure signs. There was no motor or sensory loss nor significant reflex changes. * * *

"Q. Did you prescribe any type of exercise for Mr. Rowell?

"A. No specific.

"Q. Did you make any suggestion whether he should get outside and to visit?

"A. As a general rule everyone needs exercise otherwise the joints and muscles * * * you * * * it is both * * * you must get

[1] In addition, the Trial Court further instructed, as regards mental·infirmity, in Instructions 5 and 8, as follows:

"5. The Court further instructs you that as to the defense of mental infirmity the burden is upon the defendant to prove by a preponderance of the evidence that Hendrix Rowell was suffering from mental infirmity * * *.

"8. The Court instructs the jury that the term 'mental infirmity' as used in the policies sued on in this case, means a mental weakness. If you find from a preponderance of the evidence in this case that the plaintiff's disability or inability to practice his profession is due to 'mental infirmity,' then the Court instructs you that your verdict shall be for the defendant."

a certain amount of interest with which to keep your physiology going.

"Q. Therapeutic?

"A. His attitude, his vision, hearing and without all those, (interrupted)

"Q. This therapeutic value of exercising and sunshine is beneficial to a person?

"A. That is essential. * * *

"Q. By this arteriosclerosis or hardening of the arteries at any time is there a possibility of a stroke for different sides of your body, different portions of your body?

"A. Lack of circulation interferes with any organ and the brain, of course, controls your mental processes and emotional system and your movements and feelings and sight and hearing and judgment and just about everything else."

Whether by skilled cross examination Dr. Semmes' testimony was weakened was a question for the jury to decide. Furthermore, we mention that Mr. Rowell testified in the trial, both on direct and cross examination, and the jury was able to observe him. His testimony began before lunch, was interrupted by the lunch hour, and was resumed in the afternoon; and, exclusive of exhibits, occupies 67 pages in the transcript. Thus, the jury had ample opportunity to see whether Mr. Rowell was "mentally infirm." Certainly a jury question was made; and the jury could well have concluded—as we do—that hardening of the arteries is a physical infirmity, since some of the arteries are a part of the physical body; that when the arteries in the brain harden and a mental atrophy resulted it was the result of a physical infirmity and

not a mental infirmity. We find no merit in appellant's argument on "mental infirmity."

■ II. *Continuous Confinement*. Each of the policies sued on contain substantially this language as essential to the establishment of Mutual's liability:

" * * * If the Insured, because of such sickness, shall be continuously confined within doors and regularly attended therein by a legally qualified physician * * *."

In addition to the Instruction No. 1, previously quoted, the Trial Court instructed the jury on this matter of continuous confinement in Instructions Nos. 4, 10, and 13, as follows:

"4. If you find from the testimony in this case that the plaintiff Rowell was advised by a reputable physician or physicians to take a reasonable amount of exercise and to subject himself to fresh air and sunshine, for the best interest of the treatment of plaintiff's condition from which he suffered, and further advised him to take automobile trips; and if you further find that the plaintiff transacted a limited amount of personal business, and, in good faith relying upon the advice of his physician or physicians, did take short walks and automobile trips, and took a moderate amount of exercise, and subjected himself to fresh air and sunshine, then you are told that this is in compliance with the provisions of the policy providing that the plaintiff must be continuously confined indoors, and you may take this into consideration, along with other evidence, in arriving at your verdict. * * *[2]

"10. The Court instructs you that if you find from the evidence that the plaintiff has not been continuously confined within doors, as explained in these

---

2. Mutual objected specifically to this Instruction No. 4; and those objections will be discussed in Topic III, infra.

instructions, or if so confined has not been regularly treated at the place of confinement by a legally qualified physician, then your verdict shall be for the defendant. * * *

"13. The Court further instructs you that the burden is upon the plaintiff to prove by a preponderance of the evidence that he has been continuously confined within doors and that he has been under the professional care of a physician therein at such place of confinement as explained in these instructions. If you find that the plaintiff has not met this burden of proof, your verdict shall be for the defendant."

In March 1961 Mutual employed special investigators to trail Mr. Rowell and watch his every movement, in an effort to see if he was "continuously confined within doors"; and such investigators testified for Mutual in this case. But the testimony of Mr. Rowell and his physicians, as to their prescriptions and advice to him, were sufficient to make a jury question on this matter of continuous confinement within doors. In Occidental Life Ins. Co. v. Sammons, 224 Ark. 31, 271 S.W.2d 922, we had before us a case in which the continuous confinement clause required the insured to be "absolutely unable to leave the house and the yard situated immediately around the house * * *"; and that the insured should not leave such confines "except to be transported to the office of the physician or surgeon or the hospital or sanitarium * * *." In resisting Sammons' claim, the insurance company showed that he had regularly followed the practice of leaving his house and yard for the purpose of taking rides, walking for recreation, and visiting with friends at various places, but that all such activities were engaged in upon the advice of his physician; that from November 11, 1950 to December 30, 1950 he worked and earned $180.00 compensation, but that the work which he did was done upon the advice of his physician. After citing many of our leading cases, we held that Sammons had not violated the confinement clause of the policy:

"In giving a 'liberal' construction to a house confinement clause in a policy, the Arkansas Court is following the majority view of the Courts in the United States. Some states give 'literal' construction but the great majority of cases have expressly or impliedly rejected the 'literal' construction doctrine and have adopted a 'liberal' view similar to that of the Arkansas Court. These cases are collected in an annotated form in 29 A.L.R.2d 1408, in which cases from twenty-seven states are cited following the 'liberal' construction view."

We have previously quoted a portion of Dr. Semmes' testimony as to the fact that certain exercise was of a therapeutic value. Dr. Semmes further testified as to his advice to Rowell:

"I thought he ought to keep himself active and get fresh air and a certain amount of exercise and occupy himself as far as he could without running any risks, and to follow the medical indications for hardening of the arteries."

Dr. George Talbot was Mr. Rowell's local physician in Pine Bluff and, along with Mr. Rowell, made monthly reports to Mutual, which original reports are in the record before us and are quite enlightening. Mutual knew all along that Mr. Rowell was going to Dr. Talbot's office and following his instructions. Dr. Talbot testified:

"Q. Did you recommend that Mr. Rowell take exercise and walk from time to time?

"A. I did, to be out of his house and move around.

"Q. It is therapeutically beneficial to him to get exercise and sunshine?

"A. There was no reason to limit him physically, there was no reason to confine him to the house, natur-

ally he would be better off to be out and around.

"Q. As Dr. Semmes advised him to get exercise you would go along with that?

"A. I did.

"Q. If he told him to take occasional trips in a car you would go along with that, it is on the records you sent into Mutual of Omaha, didn't you?

"A. I did."

Without reciting all of the evidence as to Mr. Rowell's activities, it is sufficient to say that, under our holding in Occidental Life Ins. Co. v. Sammons, supra, a question was made for the jury as to whether Mr. Rowell was "confined continuously indoors" within the policy coverage. The appellant cites, and strongly relies on our case of Michigan Life Ins. Co. v. Hayes, 231 Ark. 614, 332 S.W.2d 593, and claims that the Hayes case in effect overrules or materially limits the Sammons case. In the Hayes case the confinement clause was practically the same as in the Sammons case; but the activities of Dr. Hayes were of such a vast and continuous nature that we held that, even on a physician's advice and prescription, we could not say that a totally disabled person could engage in all of those activities and still claim to be within the language of the confinement clause. We said that the Sammons case went as far in the "liberal construction" as we cared to go, and that the

activities in the Hayes case went beyond the pale of activities allowed by the Sammons case. Here is our language:

"To state our position, we simply say that this Court is unwilling to further extend or further liberalize the interpretation given the confinement clause in the Sammons case, i. e., that case represents the ultimate peak of liberal construction which we have approved—or will approve in future cases. Of course, appellee asserts that this case calls for no more liberal construction than the Sammons case. As stated, we disagree with this assertion; but if it be correct—then we are modifying our previous interpretation."

In the case at bar, the activities of Mr. Rowell, under the advice and direction of his physicians, were not nearly as extensive as those sanctioned in the Sammons case, so we hold, here, that a question was made for the jury under the Sammons case, and that the activities here are not to the extent of those in the Hayes case. There was ample evidence to sustain the jury's verdict.

■ III. *Mutual's Objections to Instruction No. 4.* In Topic II, supra, we copied Instruction No. 4, and noted that Mutual objected specifically to said instruction. We now discuss the point. Mutual claimed that certain expressions in the instruction were indefinite and therefore the entire instruction should have been refused.[3] The appellant seeks a reversal be-

3. Here are Mutual's said objections:
"To which action of the Court in giving to the jury plaintiff's written requested Instruction No. 4, the defendant at the time objected specifically in line three the use of the words 'reasonable amount of exercise' are indefinite. 'Reasonable amount of exercise' might mean going to a gymnasium and exercising as long as he didn't play handball or something like that. Line six directs, it says, 'further advised him to take automobile trips': that is indefinite, it leaves up to speculation on the part of the jury as to what kind of trip and how far he might

go; he might take an automobile trip to California and back. The next line, 'transacted a limited amount of personal business,' I object to that on the ground that if he is totally disabled he couldn't transact any personal business. Then on the question of 'moderate amount of exercise' again as used in the tenth line, I object to that on the ground that it is indefinite and doesn't give the jury any basis upon which to determine the facts. I object to it specifically on the ground that the doctor or any doctor does not have any right to rewrite the insurance contract."

cause of its specific objections; but the answer is clear: the Instruction No. 4 was not inherently erroneous; and if the appellant considered the Instruction No. 4 to be "indefinite" in the particulars mentioned, the burden was on the appellant to offer an instruction which eliminated the so-called indefinite words, or to offer instructions which defined the words or expressions which appellant considered to be indefinite. McGee v. Smitherman, 69 Ark. 632, 65 S. W. 461; Western Coal Co. v. Jones, 75 Ark. 76, 87 S.W. 440; and Queen of Ark. Ins. Co. v. Malone, 111 Ark. 229, 163 S.W. 771. Appellant offered no instructions to define the expressions claimed to be indefinite.

## CONCLUSION

The judgment of the Circuit Court is in all things affirmed; and the sum of $2,000.-00 is awarded the appellee as additional attorneys' fee for services in this Court.

HARRIS, C. J., not participating.