256

WILLIAM E. GORDON ET AL v. VELMA M. SMITH

5-4977                                    444 S. W. 2d 873

Opinion delivered September 29, 1969

*Smith, Williams, Friday & Bowen*, for appellants.

*Gannaway & Darrow,* for appellee.

FRANK HOLT, Justice. The only issue on this appeal is whether a jury verdict for damages is excessive. The appellee was injured in an intersection accident while she was riding as a passenger in the front seat of an automobile driven by her employer, Dr. Fletcher Watson. The Watson vehicle was struck on the passenger side by an automobile being operated by appellant Gordon, an employee of appellant Ward Supply, Incorporated. Dr. Watson and appellee Smith brought separate suits against appellants. The cases were consolidated for trial and resulted in verdicts for both plaintiffs. Appellants appeal only as to the damages awarded to appellee. They contend that the $55,000 jury award to appellee is excessive.

A comparison of jury awards is of scant value in appeals on this issue. The degree of injury is rarely the same and the purchasing value of the dollar is much less than several years ago. On appeal we must study and view the evidence most favorable to the appellee and then determine whether the jury award is so great as to shock the conscience of the court or to demonstrate that the jurors were motivated by passion or prejudice. *Ark-La Gas Co.* v. *Strickland,* 238 Ark. 284, 379 S. W. 2d 280 (1964); *Fred's Dollar Store* v. *Adams.* 238 Ark. 468, 382 S. W. 2d 592 (1964); *Grandbush* v. *Grimmett.* 227 Ark. 197, 297 S. W. 2d 647 (1957). With these governing rules of law in mind we review the evidence.

As a result of the collision, appellee was thrown forward, her head hit the right window, her abdomen struck the right armrest, and her right shoulder was caught under the dashboard. Dr. Watson was thrown against her. Appellee was taken directly to a hospital where she was confined for three or four days. A month later she returned to her job and remained with Dr. Watson about seven months or until he permanently closed his office in June 1968. She has not worked since then. According to appellee, she was physically unable to fulfill her routine duties as a registered nurse. She was only able to assist Dr. Watson by being present when he examined women patients and to perform other incidental duties which did not require physical exertion. Dr. Watson corroborated her physical limitations. Since the accident, or for the 13 months preceding the trial, she has suffered from headaches, stiffness in the neck, numbness in three fingers of her right hand and difficulty in raising her right shoulder. She testified that she cannot lift anything and is unable to do normal housework. At the time of the trial appellee was taking physical therapy and there was evidence that these treatments would be required in the future for a period of three to six months as a minimum. Her treatments consisted of head-halter traction to her neck, exercise to her arm, shoulder, hand and back, heat, muscle relax-

ants, pain medication and rest. According to appellee, her right kidney was dislodged, causing nephroptosis or what is known as a "floating kidney." She is uncomfortable from what she terms a "mass" in her right side and the function of her kidney is affected, causing her to get up excessively during the night. She stated that she now experiences pain from her kidney and that her right side is tender. Five of her teeth were fractured, four of which had to be crowned and one "smoothed." She has difficulty dressing herself, combing her hair, writing or using her right arm. She experiences discomfort while working when her head is in a fixed position for any length of time.

There was medical evidence that appellee is suffering from muscle irritability and a decreased range of motion in her neck region, right shoulder and upper right limb; there is a sensory involvement resulting in an impairment of feeling from the top of her head on the right side to her fingers, loss of muscle power and impairment in blood vessel flow; that these injuries are painful and in the future an aching variety of pain is anticipated; that the movement of the right upper limb is restricted because of the decreased range of motion in the right shoulder and that appellee has difficulty in working with her head in a fixed position; that as a result of the orthopedic injuries appellee has a 20 to 25 percent permanent partial disability to the body as a whole with some possibility of improvement.

The appellee is 46 years of age with a stipulated life expectancy of 26 years. She had worked for Dr. Watson for 24 years and at the time of the accident was earning $325 per month. There is evidence of a heavy demand for registered nurses with a starting salary of $400-$450 per month. By trial date, appellee had lost $3,888.36 in earnings. Her medical expenses, including her dental work, totaled $1,732.32.

It must be said there was substantial evidence from

which the jury could conclude that appellee's injuries severely limit her in the performance of her duties as a registered nurse; that she will have difficulty finding employment and she will experience pain and suffering in the future and additional medical expenses. Therefore, we are not in a position to say that the amount awarded by the jury, especially in view of the constantly decreasing purchasing power of the dollar, shocks the conscience of the court or demonstrates passion or prejudice on the part of the jurors. *Noble McChristian et al* v. *Tommy Hooten et al,* 245 Ark. 1045, 436 S. W. 2d 844 (1969); *Lin Mfg. Co.* v. *Courson,* 246 Ark. 5, 436 S. W. 2d 472 (1969); *Dyer* v. *Payne,* 246 Ark. 92, 436 S. W. 2d 818 (1969).

Affirmed.