## Thomas BLISSETT *v.* H. L. FRISBY
### AND Elwanda Frisby

5-5330                                                    458 S. W. 2d 735

### Opinion delivered October 19, 1970

*Crumpler, O'Connor, Wynne & Mays,* for appellant.

*Shackleford & Shackleford,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellees sued appellant to recover damages for injuries suffered by Elwanda Frisby when the automobile she was driving was struck from the rear by one being operated by appellant. For reversal of a judgment for $15,000 for Elwanda Frisby and for $6,768 in favor of her husband, H. L. Frisby, appellant relies upon the following points:

I. The verdict of the jury is contrary to the evidence.

II. The verdict of the jury in favor of both of

the plaintiffs was excessive and appears to have been given under the influence of passion or prejudice.

III. The Court erred in allowing plaintiffs to admit evidence of the value to the plaintiff, H. L. Frisby, of the services of his wife, Elwanda Frisby, in the operation of his dairy business, and in instructing the jury that the plaintiff, H. L. Frisby, was entitled to recover for the value of the loss of services of his wife, Elwanda Frisby, in the operation of his dairy business.

IV. That the court erred in allowing the plaintiff, H. L. Frisby, to introduce evidence of expenses which are not properly recoverable elements of damage.

We shall discuss these points in the order listed.

I

Appellant argues that the jury verdict is contrary to the evidence because it is clear that the jury did not attribute any negligence to Elwanda Frisby as a cause contributing to her damage. In effect, appellant's argument is that the preponderance of the evidence showed that Mrs. Frisby was negligent and that her negligence contributed substantially to the damages suffered by appellees.

The collision occurred around 5:00 p.m., August 1, 1967, on Highway 167, south of El Dorado. Mrs. Frisby was driving to her home about nine miles south of El Dorado, where the Frisbys were conducting a dairy farm operation. Her 18-month-old daughter was riding in an infant car seat in the center of the front seat of the Frisby Chrysler automobile. Appellant Blissett followed her from the El Dorado city limits for about four miles, maintaining an interval of about 100 yards. Both vehicles were traveling at a speed of 55 to 60 miles per

hour. Shortly before the collision the Frisby infant either fell or climbed from the car seat in which she was riding. Mrs. Frisby slowed her vehicle and took measures to grasp the child. There is a wide variance in the testimony of the parties regarding what happened at this point.

Elwanda Frisby's version is:

She slowed to about 45 miles per hour and pulled the child down into the seat beside her. At that time, she looked into her rear view mirror, but did not observe any vehicles to the rear. She then accelerated her vehicle speed to 50 or 55 miles per hour, when her daughter started pulling on her arm. She gradually slowed her vehicle, moving it toward her right in order to pull off onto the shoulder of the road and move her child to the rear seat of the vehicle. She then heard the screeching of brakes, glanced into her rear view mirror, and was struck from the rear almost instantly. The child never did fall to the floorboard or fall out of the infant seat. She had applied her brakes when decreasing her speed. Her automobile speed was down to 15 or 20 miles per hour when she was struck.

Blissett's testimony, in substance, follows:

After the two vehicles had passed over a bridge, he noticed that the Chrysler vehicle speed was diminishing and took his foot off his accelerator because the interval had been reduced to about one-half the former distance. He had noticed the baby falling out of the infant seat just before the Frisby vehicle speed had slacked. The baby was climbing out of the seat, then fell out, and Mrs. Frisby fell over to get the child. Both driver and child disappeared from his view. Mrs. Frisby then hit her brakes and skidded to a stop in the highway. Her stop was as sudden as possible, and there was no way he could have stopped without striking the

rear of the Chrysler. The rear of the Chrysler rose, and the front of the Falcon went down so that the Falcon hood and grill struck the bottom of the Chrysler bumper. There was opposing traffic which prevented his passing Mrs. Frisby to her left. Turning to the right was not possible because of the height of the highway dump. Mrs. Frisby had not brought her vehicle to a complete stop when it was struck.

The investigating state trooper testified that Mrs. Frisby told him that the child fell from the seat and that she attempted to stop to pick her up.

The verdict of the jury was a general one. It was rendered upon instructions relating to negligence, proximate cause and comparative negligence, and preponderance of the evidence, of which appellant does not complain. Resolution of conflicts in testimony in a law case is not within the province of an appellate court. *Rhoden* v. *Lovelady*, 239 Ark. 1015, 395 S. W. 2d 756; *Norman* v. *Gray*, 238 Ark. 617, 383 S. W. 2d 489. It is fundamentally a jury function, and a verdict usually is conclusive. *Wasson* v. *Warren*, 245 Ark. 719, 434 S. W. 2d 51. Especially is this so where questions of negligence, contributory negligence and credibility of witnesses are involved. *Wood* v. *Combs*, 237 Ark. 738, 375 S. W. 2d 800; *Palmer* v. *Dillard*, 224 Ark. 155, 272 S. W. 2d 66; *Wasson* v. *Warren*, supra. On appeal we give the evidence its strongest probative force in favor of the verdict. *Palmer* v. *Dillard*, supra; *Jarrett* v. *Matheney*, 236 Ark. 892, 370 S. W. 2d 440. If the trial court had found the verdict to be against the preponderance of the evidence, it could have granted appellant's motion for a new trial, but this court cannot do so. *Horn* v. *Shirley*, 246 Ark. 1134, 441 S. W. 2d 468. It is only where there is no substantial evidence to support the verdict, where fair-minded men can only draw a contrary conclusion or where there is no reasonable probability that the incident occurred according to the version of the prevailing party, that a jury verdict on these questions will be disturbed on appeal. *Norman* v. *Gray*, 238 Ark. 617, 383 S. W. 2d 489; *Midwest Bus Lines, Inc.* v. *Williams*, 243 Ark. 854, 422 S. W. 2d 869; *McWilliams* v. *R. & T.*

*Transport, Inc.*, 245 Ark. 882, 435 S. W. 2d 98. We cannot say that the evidence relied upon by appellant was so conclusive as to preclude a jury finding that the negligence of the following vehicle was the sole proximate cause of the collision, or that any negligence of which Mrs. Frisby was guilty was only a minor contributing cause of her injuries.

## II.

We cannot say that the awards made by the jury are excessive or that they were made under the influence of passion or prejudice. We cannot reverse on this ground unless, after viewing the evidence in the light most favorable to the appellees, we find the amount of the verdicts to be so great as to shock the conscience of the court or to demonstrate that the jury was motivated by passion and prejudice. *Gordon* v. *Smith,* 247 Ark. 256, 444 S. W. 2d 873; *Dyer* v. *Payne,* 246 Ark. 92, 436 S. W. 2d 818. Appellant's argument that, in considering this point, we must consider that the negligence of Elwanda Frisby should have reduced the damages recoverable has been treated above. His remaining argument on this point is premised upon the contention that Mrs. Frisby cannot recover for any loss of earning capacity because her resulting 10% disability to the body as a whole will not prevent her from performing all the functions discharged by her prior to the injury.

It must be remembered that Elwanda Frisby was also entitled to recover damages based upon the nature, duration and extent of her injuries, pain, suffering and mental anguish she has experienced and which she may reasonably be expected to undergo in the future, in addition to those based upon her loss of earning capacity. We must also consider that H. L. Frisby's damages would include the reasonable expense of medical care,[1] treatment and services rendered and reasonably certain to be required in the future, the $400 reduction in value

---

[1]He testified that he had expended $1,640.39 for hospital, drug and physicians' bills.

of his automobile and his loss of the society, companionship and marriage relationship, as well as the loss of the services ordinarily rendered by a wife.

The impact of the collision was such that the Blissett Falcon was rendered inoperable, after it had skidded approximately 33 feet before striking the rear of the Chrysler. Both Mrs. Frisby's age and life expectancy were 34 years. She was actively engaged in the daily operation of the Frisby dairy farm, her husband being otherwise regularly employed. She maintained the feeding, health, production and breeding records on their 74 head of cattle. She also supervised their artificial breeding. She observed all the cattle thrice daily to view their activities and detect illnesses. She administered all necessary injections to the cattle and called a veterinarian when necessary for other purposes. She saw that the calves were properly bottle-fed. She did most of the feeding of the cattle and helped with the milking. It was her responsibility to keep sufficient feed and medicine on hand and to keep all the farm machinery in operating condition. She also checked the pasture fences.

When she suffered from a severe headache, stiffness of her neck, nervousness and insomnia during the night following her injury, she consulted a physician. Viewed in the light most favorable to appellees, there was evidence from which the jury might have found the following:

Mrs. Frisby suffered a cervical ligamentous sprain. She underwent physiotherapy consisting of intermittent traction, sonolater treatment and microwave diathermy over a period of several months. For a considerable part of this time she took prescribed muscle relaxants four times daily as well as pain relief medication. An orthopedic surgeon later prescribed physiotherapy which included traction and hot baths thrice daily. She showed some improvement, but severe muscle spasms in her neck and shoulder continued. She began to lose the use of her left arm and hand and

noticed increasing numbness in that limb. After nine months, her physician noted a circulatory problem, prescribed additional physiotherapy and recommended a neurological consultation.

A neurological surgeon found evidence of a chronic musculo-ligamentous sprain of the cervical spine and a thoracic outlet syndrome. He added special exercises and heat packs to her therapy. Although there was improvement in her condition, she was referred to a surgeon specializing in thoracic surgery when deterioration of her arm continued over several months. The surgeon removed a rib, because the shortening of ligaments as a result of the collision had pulled the clavicle and this rib together so that an artery was pinched and the blood supply to her arm reduced. She suffered intense pain for a month, but her condition then improved. She may be expected to have to continue physiotherapy and sonolater treatments for an indefinite period of time, perhaps the rest of her life. Two years after the collision, she was still suffering extremely severe muscle spasm around the strap muscles of her neck. She may have discomfort in her left arm and shoulder for many years, especially when she tries to do heavy work. Prognosis of this injury is difficult. With proper care and continued therapy, she might remain relatively asymptomatic, but this type of injury may not become symptomatic for approximately ten years. Prolonged spasm of the type she experienced can produce pain which is severe and disabling. She has a permanent disability to the body as a whole of 20%.

At first she was unable to perform any of her duties in connection with the farm operation. Her inability to do so necessitated her husband's discontinuance of his employment between February and December of 1968, although she became able to help with record keeping and bookkeeping. At the time of trial, she was able to resume some of her management duties, but could not do any of the physi-

cal work, such as feeding. A helper had been employed, and Mrs. Frisby's 19-year-old son had come and helped with some of the farm work. She stated that it had been necessary to reduce the size of the herd so that it could be properly cared for. She was still limited in the use of her left arm and often became tired and had to stop and use a heat lamp to relieve muscle spasms. She could only work on the books for short periods of time because of the muscle spasms.

Mrs. Frisby was a very competent herdswoman. The value of her services, based on salaries paid in the locality, would be $650 per month plus quarters, meat, milk and other fringe benefits.

Appellant does not point out any failure of proof to support the award to H. L. Frisby. It is sufficient to say that the amounts of the awards do not shock the conscience of the court. Neither do they indicate that the jury was motivated by passion or prejudice.

### III

The court's instruction covering the measure of Elwanda Frisby's damages permitted her to recover for the value of any loss of ability to earn, and that covering the measure of H. L. Frisby's damages permitted him to recover "for any loss of services ordinarily rendered by a wife." Appellant contends that these instructions permitted a double recovery. We do not agree with appellant's construction of these instructions. The services rendered to the dairy farm operation by Mrs. Frisby were shown to have a value in excess of $600 per month, which can be said to be a fair indication of her earning capacity. These services were certainly far above and beyond those *ordinarily* rendered by a wife.

Appellant now argues, however, that instruction no. 18 was ambiguous and misleading and should have either defined the type of services covered by the instruction or omitted this element. Appellant's objection

in the trial court was not based on the instruction's being ambiguous or misleading. Appellant stated only that the instruction permitted H. L. Frisby to recover an improper element of damages, *i. e.*, any loss of services rendered by his wife as a helper in the dairy business. The present objection cannot be made for the first time on appeal. *Bussell* v. *Missouri Pacific Railroad Co.*, 237 Ark. 812, 376 S. W. 2d 545. Appellant did not request any instruction to define, limit or eliminate the words he now finds ambiguous or misleading. In the absence of any such request, he is in no position to now complain. *Lemm* v. *Sparks*, 230 Ark. 105, 321 S. W. 2d 388; *Mutual Benefit Health & Accident Assn.* v. *Rowell*, 236 Ark. 771, 368 S. W. 2d 272, 98 A. L. R. 2d 277.

## IV.

Appellant says that evidence of expense paid by Frisby for his wife to travel to physicians in Louisiana, rather than in El Dorado, for baby-sitters while she was going to doctors, for telephoning to make appointments and confer with doctors, and for lodging and meals of Frisby while his wife was in the hospital was improperly admitted. He argues that these costs are neither recoverable nor pleaded as damages. The latter objection was not made in the trial court, so we will not consider it here. Appellant's argument as to travel expenses is based upon the assumption that there was no necessity for Mrs. Frisby to leave El Dorado for her medical treatment. There is a decided scarcity of authority in Arkansas as to recoverability of particular items of expense and admissibility of particular evidence. Consequently we turn to other jurisdictions for guidance.

It has been said that a successful plaintiff in an action such as this is entitled to recover whatever is a reasonable and necessary outlay in attempting to be cured of his injuries. *Sherwood* v. *Chicago and W. M. Ry. Co.*, 82 Mich. 374, 46 N. W. 773 (1890); *Ayers* v. *Macoughtry*, 29 Okla. 399, 117 P. 1088 (1911); *Hart* v. *Charlotte, C. and A. R. Co.*, 33 S. C. 427, 12 S. E. 9, 10 L. R. A. 794 (1890). The allowance of expenses for

travel or transportation of one suffering from personal injuries to and from a physician's office is properly allowable as a part of the medical expenses. *Ledbetter v. Hammond Milk Corp.*, 126 So. 2d 658 (La. Ct. App. 1961); *Alabama City, G. and A. Ry. Co.* v. *Appleton*, 171 Ala. 324, 54 So. 638 (1911); *Hay* v. *Ham*, 364 S. W. 2d 118 (Mo. Ct. App. 1962). It has also been said that a husband is entitled to recover for any expenses which he has incurred for his wife's care and treatment for bodily injuries suffered by her as well as for medical expenses. *Cook* v. *Atlantic Coast Line R. Co.*, 196 S. C. 230, 13 S. E. 2d 1, 133 A. L. R. 1144 (1941). Reasonable expense of a husband for transportation of his wife to and from physician's offices and hospitals has been held to be a foreseeable damage resulting from a tort-feasor's negligence. *Nicholson* v. *Blanchette*, 239 Md. 168, 210 A. 2d 732, 14 A. L. R. 3d 525 (1965). A Georgia Court of Appeals has said that there is no sound reason in sense and justice why a recovery of expenses of four trips of parents to another city and their room and board while there obtaining medical treatments for their daughter should not be recovered. *Southern Bell Tel. and Tel. Co.* v. *Whiddon*, 108 Ga. App. 106, 132 S. E. 2d 237 (1963). Expenses of parents for transportation to, and board and lodging in, a town distant from their home where their injured son was taken to a hospital were held admissible as evidence of damages recoverable by them. *Woodman* v. *Peck*, 90 N. H. 292, 7 A. 2d 251, 122 A. L. R. 1402 (1939). The court there said that their attendance on the son might be found a reasonable need for him in recovery by way of comfort and cheer.

Reasonable expense of a husband in traveling to visit his wife in the hospital during her treatment has also been held recoverable. *Hall* v. *Burkert*, 117 Ohio App. 527, 193 N. E. 2d 167 (1962). Expenses of a husband in traveling and residing in a hotel (exclusive of meals, laundry, tips and telephone calls) during a wife's treatment have been allowed. *Baird* v. *Employers' Liability Assur. Corp.*, 38 So. 2d 669 (La. Ct. App. 1949). Both incurred and anticipated travel expenses of the father of

an injured child have been considered in measuring damages. *Burke* v. *National Farmers Union Property and Casualty Co.,* 36 Wis. 2d 427, 153 N. W. 2d 545 (1967)..

It has been held that expense of hiring a house-keeper may be an item relating to loss of services and society. *Ashley* v. *American Automobile Ins. Co.,* 19 Wis. 2d 17, 119 N. W. 2d 359 (1963). Travel expenses and compensation for housekeeping services performed by a sister of a victim have been held to be a proper allowance. *Bowden* v. *Atlantic National Insurance Co.,* 165 So. 2d 15 (La. Ct. App. 1964). Board for a sister who accompanied an injured person during medical treatment away from home has been allowed as an element of damages. *Ayers* v. *Macoughtry,* 29 Okla. 1399, 117 P. 1088 (1911).

While not controlling, evidence of expense incurred is some evidence of reasonableness. *Malinson* v. *Black,* 83 Cal. App. 2d 375, 188 P. 2d 788 (1948); *Carangelo* v. *Nutmeg Farm,* 115 Conn. 457, 162 A. 4, 82 A. L. R. 1320 (1932); *Hay* v. *Ham,* 364 S. W. 2d 118 (Mo. Ct. App. 1962). This rule of admissibility was applied to expenses for bus fares in *Conner* v. *Hamlin,* 33 Ala. App. 54, 29 So. 2d 570 (1947). This approach is not dissimilar to our permitting evidence of the amount paid in good faith for repair of a motor vehicle to be considered in determining damages thereto. See *Golen-ternek* v. *Kurth,* 213 Ark. 643, 212 S. W. 2d 14, 3 A. L. R. 2d 593; *Casey* v. *Burdine,* 214 Ark. 680, 217 S. W. 2d 613.

A defendant who conceives that expenses incurred for medical treatment are unreasonable certainly may, and probably should, offer evidence to support his view. *Alabama City, G. and A. Ry. Co.* v. *Appleton,* 171 Ala. 324, 54 So. 638 (1911); *Carangelo* v. *Nutmeg Farm, supra.* The reasonableness and necessity of any expenditure for medical treatment is a question of fact for the jury (or a judge sitting as trier of the facts). *Hart* v. *Charlotte, C. and A. R. Co.,* 33 S. C. 427, 12 S. E. 9, 10 L. R. A. 794 (1890). We have held that questions as

to the amount of expenditures for physicians and the necessity for employment of a driver for an injured person were for the jury. *Lynch* v. *East Arkansas Builders Supply Co.*, 193 Ark. 1004, 104 S. W. 2d 205.

Whether services of physicians outside the locale of the plaintiff's residence are reasonably necessary depends upon the circumstances of the particular case. See *Baird* v. *Employer's Liability Assur. Corp.*, 38 So. 2d 669 (La. Ct. App. 1949); *Grinnell* v. *Carbide and Carbon Chemicals Corp.*, 282 Mich. 509, 276 N. W. 535 (1937). An injured person is not always required to undergo treatment by the nearest doctor or in the community where he resides. *Ashley* v. *American Automobile Ins. Co.*, 19 Wis. 2d 17, 119 N. W. 2d 359 (1963); *Neese* v. *State Medical Society*, 36 Wis. 2d 497, 153 N. W. 2d 552 (1967).

Frisby testified that, after his wife was unable to get an appointment with an El Dorado doctor, she went to the family physician at Bastrop, Louisiana, where the Frisbys had previously lived. She had once been employed by this doctor. After seven treatments, he referred her to an El Dorado physician because of the extensive driving required in coming to him. She testified that after a particularly severe siege of muscle spasms, she returned to this doctor who then referred her to another physician in Bernice, Louisiana, for physiotherapy. It was more convenient for her to go to this doctor.

Frisby also testified that it was necessary, because of the collision, for him to employ household help and baby-sitters and to incur the travel and telephone expense. No controverting testimony was offered.

Under these circumstances, we cannot say as a matter of law that these expenses were not reasonably necessary. We feel that the better rule leaves the reasonableness and necessity of these expenses for determination by the jury. We also believe that the trial judge has some discretion in deciding whether there is sufficient foundation for the admission of testimony giving

the amount of certain expenditures. We find no abuse of discretion in admitting the testimony questioned here.

The judgment is affirmed.