PHILLIPS MOTOR COMPANY *v.* PRICE, ADMX.

4-6828                                    165 S. W. 2d 251

Opinion delivered October 19, 1942.

*Percy A. Wright* and *Reid & Evrard,* for appellant.

*Ivy & Nailling* and *A. F. Barham,* for appellee.

HUMPHREYS, J.   Two separate suits were brought in the circuit court of the Osceola district of Mississippi county by appellees against appellants to recover damages growing out of a collision between two automobiles between 1 and 2 o'clock a. m., February 5, 1941, on U. S. highway No. 61 in said district and county, on account of the immediate death of Nelson Catalina and Vernon Dean Price, occupants of one of the automobiles, through the alleged negligence of Cal Gossett who was driving the other automobile.

It was alleged in both complaints that at the time Cal Gossett negligently ran into the automobile occupied by Catalina and Price, Gossett was operating an automobile owned by the Phillips Motor Company and was engaged in business for said Phillips Motor Company. It was also alleged that Loyce Donaldson, intervener as a plaintiff, owned the automobile occupied by Catalina and Price.

In the Catalina suit damages were prayed for the benefit of the estate of Nelson Catalina, and for the benefit of his parents, as his next of kin.

In the Price suit damages were prayed for the benefit of the estate of Vernon Dean Price and for the benefit of his mother, as his next of kin. In that case Loyce Donaldson, the owner of the automobile, prayed for judgment for the damage done to his automobile in the collision.

Answers were filed by appellants in each case denying each and every material allegation therein and alleg-

ing that the collision occurred solely as a result of the negligence of Vernon Dean Price and Nelson Catalina.

The causes were consolidated for the purposes of trial, and at the conclusion of the evidence appellants requested that verdicts be directed in their favor in each case, which motions were overruled over appellants' objections and exceptions.

The causes were then submitted to a jury upon the pleadings, the testimony and correct instructions relative to the law of negligence and contributory negligence and to the law governing liability of a master for a negligent act of a servant when the servant is engaged in the business of his master.

The jury returned a verdict in the Catalina case for $2,000 for the benefit of the next of kin as compensation for the loss of contributions and for the benefit of his estate in the sum of $500 to cover funeral expenses.

The jury returned a verdict in the Price case in the sum of $4,800 for the benefit of the next of kin and $200 for the benefit of the estate to cover funeral expenses. The jury also rendered a verdict in favor of Loyce Donaldson, in the Price case, for $150 as compensation for damages to his automobile.

Separate judgments were rendered by the court on each verdict from which an appeal has been prosecuted to this court by appellants.

Appellants contend for a reversal of the judgments upon two grounds, one being that there is no substantial evidence in the record tending to show that Cal Gossett, who was also killed in the collision, was guilty of any negligence, and the second being that, at the time of the collision, Cal Gossett was not engaged upon any business for appellant, Phillips Motor Company, and that, even if he were negligent, there is no substantial evidence in the record showing that Cal Gossett was, at the time, engaged in the performance of any business for Phillips Motor Company.

There were no eye-witnesses to the collision. All three parties involved were so near dead when discovered that they were speechless and almost breathless. All

three died on the scene or while being taken to the hospital. The Gossett automobile was afire, and it would have burned up in a very short time if the first witness on the scene had not extinguished the flame. The collision occurred at about 1:30 a. m. on February 5, 1941, on a gradual curve in U. S. highway No. 61 in the Osceola district of Mississippi county. Prior to the collision the Gossett automobile was being driven by Cal Gossett in a northerly direction, and the automobile owned by Loyce Donaldson, occupied by Catalina and Price, was proceeding in a southerly direction. After the collision within the curve the automobiles were about 150 feet apart and each was headed in the direction from which it was known to have been coming. After the collision each had turned around. The left front fender and headlight of the Gossett automobile was completely demolished and the witnesses said that it was injured all along the left side. The front left wheel of the Donaldson car was knocked off and the body or axle was let down and made a cut in the pavement of considerable length and width and pointed in the direction of the automobile as it skidded and turned over and finally landed on the west shoulder of the highway. The Donaldson car was damaged all over, or, as some witnesses said, ''completely demolished.'' A few feet north of the cuts in the pavement on the west side of the middle line a lot of glass and dirt was found. A small amount of scattered glass was found on the east side of the middle line of the pavement. A map was prepared and introduced in evidence showing the curve in the highway, the relative positions in which the witnesses found the two automobiles after the collision, the location of the dirt, glass and cut places in the pavement, etc., which map is inserted in this opinion in aid of the statement of facts. (See end of opinion for copy of the map.)

The evidence showed that during the evening before the collision young Catalina and Price were out driving with some lady friends and refreshed themselves with soft drinks. There is evidence to the effect that during the evening Cal Gossett was playing pool and occasionally taking a can of beer.

The undisputed evidence is to the effect that the Phillips Motor Company had sold the automobile to Cal Gossett, and that the contract had been assigned to a finance company, but that he was using the car as an employee for the Phillips Motor Company just as he had been doing before he bought it. At the time of the collision the car had the Phillips Motor Company dealer's license on it, but it seems that all employees of the Phillips Motor Company operated under this character of license whether the car or cars were owned by the Phillips Motor Company or by the employees.

The place of business of the Phillips Motor Company was in Blytheville. On the day before Cal Gossett was killed, Mr. Phillips, the head of the Phillips Motor Company, gave all of the employees a banquet early in the evening. Cal Gossett and the other employees were there. After the banquet they all went back to the Phillips Motor Company's place of business and from there each went his own way. The regular hours for employees to work were between 7:30 a. m. and 6:00 p. m., but if one had a prospect he might contact him at any time and at any place. After the banquet, Cal Gossett informed several of his friends that he was going to Luxora to assist his brother-in-law in checking up the pool business preliminary to taking over the financial management of the pool hall. His brother-in-law had been drafted and wanted him, Gossett, to become acquainted with the business so that he could check up on it for him during the time his brother-in-law was in the army. Gossett then drove over to his brother-in-law's pool hall for that purpose, and during the evening he played some thirteen or fourteen games of pool before his brother-in-law came in. After his brother-in-law came in and they were getting ready to close the pool hall, he and his brother-in-law went to the cash register and checked up the day's business and his brother-in-law gave Gossett some instructions concerning how to check up the business and look after it during his absence in the army. After they closed the pool hall, Gossett, his brother-in-law and some others drove out to what was called "The Spot," some distance from Luxora, to purchase some cigarettes. After

purchasing the cigarettes, they drove back to Luxora, and Cal Gossett got in his car and went north on highway No. 61 toward his home, and it was while on his trip home that the collision occurred, some time near 1:30 a. m. as heretofore stated.

Billy Long testified that his father, Lee Long, wanted to see Mr. Gossett about buying a truck, and that he informed Gossett on the day before he was killed at Blytheville that his father wanted to see him, and that Gossett had told him he would see him later that night; that he would be at Luxora and would talk to him.

Lee Long testified that he had sent his old truck to Blytheville by his son for Gossett to look over, and that at the time his son informed him that Cal Gossett would be in Luxora that night; that on that night around 10:00 o'clock he went to the pool hall and saw Gossett, and they walked out on the street and had a talk concerning the exchange of trucks; that they talked a few minutes and Gossett told him what he would do and also told him he would see him the next day; that no deal was made that night and the matter was dropped there.

We think it is questionable that this evidence on the part of the Longs was sufficient to show that Cal Gossett had gone to Luxora for the purpose of attending to any business for the Phillips Motor Company. His primary purpose in going to Luxora from Blytheville was to attend to his own private business in connection with taking over the financial management of the pool hall which belonged to a Mr. Eberdt, his brother-in-law, and that the conversation with Lee Long was an incident. Even according to Lee Long no deal was consummated and the whole matter was passed until the next day. Certainly, after he had this conversation with Lee Long, he was not engaged in his master's business while he was playing pool in the pool hall nor while he and his friends drove out to "The Spot" to get cigarettes, which was some distance from Luxora, and it is not contended that he was engaged in any business for his master, the Phillips Motor Company, after he had the conversation with Lee Long.

The court, therefore, erred in submitting the issue to the jury of whether Cal Gossett was transacting business for the Phillips Motor Company at or immediately before the collision between his car and the car belonging to Loyce Donaldson. The court should have peremptorily instructed a verdict in favor of the Phillips Motor Company at its request.

We take a different view of the evidence tending to show negligence on the part of Cal Gossett. We think all the evidence tends to show that Cal Gossett was driving northward on the highway, turned his car onto the left side thereof and ran into the Donaldson car and demolished it. We think from all physical facts the jury might have reasonably inferred that the collision was a result of Cal Gossett's negligence. It is true there are no eye-witnesses to tell the tale, but this is not required. Negligence may be established by circumstantial evidence. This court said in the case of *Arkmo Lumber Company* v. *Luckett,* 201 Ark. 140, 143 S. W. 2d 1107, that: "Negligence that is the proximate cause may be shown by circumstantial evidence as well as direct proof. . . . It will be sufficient if the facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred."

It was also said in the same case: "The settled rule, which has been many times approved by this court, is that a well connected train of circumstances is as cogent of the existence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony, and that any issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions."

We think the jury were warranted in finding that the indentations on the west side of the highway, the large amount of dirt and glass found on the west side thereof and the condition and location of the two automobiles after the wreck showed that the wreck occurred on that side of the highway and was caused by Cal Gos-

sett in wrongfully driving his automobile onto the west side thereof and colliding with the Donaldson car.

Appellants argue that some intervening car might have wound in and out and struck both cars, but there is no evidence whatever to warrant such a conclusion. The witnesses who appeared immediately after the collision testified that they did not meet any car coming into or going out of the curve. It was suggested that perhaps Cal Gossett drove onto the west side of the highway, across the middle line, to avoid striking some pedestrian, but to say that would be indulging entirely in speculation and, if he had done this, there would have been an eye-witness to the collision.

We think under all the circumstances there is substantial evidence in the testimony to sustain the verdict against Mrs. Cal Gossett as administratrix of the estate of Cal Gossett, deceased.

The judgment is, therefore, reversed and dismissed as to the Phillips Motor Company and affirmed against Mrs. Cal Gossett as administratrix of the estate of Cal Gossett, deceased.

Gossett automobile found here. Had been going north.

Dirt & glass found on west half of pavement →

Small amount of glass but no dirt found on east half of pavement

Marks found on west half of pavement, south of dirt and glass, leading towards Price & Catalina automobile.

Price & Catalina automobile found here, headed north -- had been going south.