PITTS *v.* GREENE, ADM'R.

5-3311                                           382 S. W. 2d 904

Opinion delivered October 5, 1964.

[Rehearing denied November 9, 1964.]

*Mahony & Yocum,* for appellant.

*Brown, Compton & Prewett,* for appellee.

PAUL WARD, Associate Justice. Susan Ann Russell, at the age of seventeen years, was fatally injured while riding in an automobile which was struck by a large trailer truck. The truck was owned by the Pitts Trucking Company (hereafter called "Pitts") and it was being driven by appellant Henry Gibson. The car in which Susan was riding was being driven by her high school classmate, Fifi Greene. It is not denied that Miss Greene was entering a street intersection in El Dorado with the green light when the truck ran the red light and struck her car.

Suit was filed against Pitts and Gibson by Chester L. Greene, as Administrator of the Estate of Susan Ann Russell, deceased. Although other issues are involved on appeal, the prime contention of appellants at the trial was and here is that the collision was caused by the failure of the truck's brakes to function and that the collision was a result of an unavoidable accident.

At the conclusion of a trial the jury returned a verdict in the amount of $2,179.28 for the use and benefit of the Estate of Susan, $25,000 in favor of Susan's mother, and $15,000 in favor of her father. Judgment was rendered accordingly, and this appeal follows.

For a reversal appellants rely on seven separate points which we will discuss under the following headings: *One,* appellants' request for instructed verdicts; *Two,* alleged error in giving certain instructions; *Three,* alleged error in refusing to give a requested instruction; and *Four,* excessive judgments in favor of Mr. and Mrs. Russell.

*One,* appellants contend the court should have instructed a verdict in favor of each of them, it being conceded apparently that any negligence shown on the part of Gibson would be attributed to Pitts. Simply stated, the issue is whether the record contains any substantial evidence to support a finding of negligence on the part of Gibson. Appellants strongly contend the record contains no such evidence. We are unable to agree with appellants.

Several witnesses who saw the accident testified as to how it happened. We think it will suffice to summarize this testimony since there is slight dispute as to the material facts. The collision occurred at the intersection of West Hillsboro Street and South Washington Street —the former running east and west and the latter north and south. Just west of said intersection and at each intersection there was a red-green traffic signal. For convenience we may hereafter refer to where South West Avenue intersects Hillsboro Street as the "first intersection" and to the intersection where the collision occurred as the "second intersection". The truck consisted of a tractor or cab and a 37-foot trailer. It was loaded with 25,000 pounds of steel at the time, and the overall weight of the truck and the load was a little over 54,000 pounds. Gibson stated he had been driving cross-country since 6:30 that morning, and the collision occurred at about 3:30 o'clock p.m. West Hillsboro Street slopes 5 feet from the first intersection to the second intersection and then it begins to rise as it goes over a viaduct 37 feet high.

The testimony of Appellant Gibson was in material respects substantially as follows: I am 36 years old; I

had been driving for Pitts 7 years and had driven this truck 4 months when the accident occurred; previous to the accident I had used the brakes several times that day and had had no trouble; the first stop I made in El Dorado was at the first intersection — there were two cars in front of me and when the light turned green I started east along West Hillsboro Street—I was driving 20 to 25 miles per hour; when I was about 200 feet west of the second intersection I saw the light turn red at the second intersection—I didn't attempt to put on my brakes until I had run about 50 feet and then when I did try to apply the brakes I found they didn't work; I first tried the service brake and then the emergency brake and after that I tried to put the truck in low gear—just as I tried to put the truck in low gear the cab of the truck was entering the intersection and collided with the automobile in which Susan was riding; if I had put the truck in low gear when I was 200 feet from the second intersection it would not have stopped the truck but it could have slowed it down and likely have missed the car; the truck picked up speed because of the down slope without applying any power; when I tried to put the truck in low gear it was already entering the second intersection.

This Court has held that any material facts may be established by circumstantial evidence. *St. Louis, I.M. & S. Ry.* v. *Hempfling,* 107 Ark. 476, 156 S. W. 171. In the case of *Adams* v. *Browning,* 195 Ark. 1040, 115 S. W. 2d 868, this Court reversed the action of the trial court in directing a verdict for the defendant, saying:

"Under our system of jurisprudence, it is the province of the jury to pass upon the facts. It is not only their privilege but their right to judge of the sufficiency of the evidence. The credibility of the witnesses, the weight of their testimony, and its tendency, are matters peculiarly within the province of the jury. If there is any substantial evidence it is the duty of the court to submit the matter to the jury."

When applying the factual situation in this case to the law as set out in the above case, we are unable and unwilling to say there is no substantial evidence of negligence on the part of Gibson to support the finding of the jury. The jury had a right to believe all or any part of his testimony, and the jury might have concluded that appellant was driving at too great a speed compatible with the slope of the street and the weight of the truck and its contents; at one time Gibson seems to say that as soon as he learned that the brakes would not work he tried to put the truck in low gear while at another time he seems to say he tried to apply the service brake and the emergency brake before attempting to put the truck in low gear. Gibson also testified that just as he attempted to put the truck in low gear it had already entered the second intersection; but at another time it would appear that he was 150 feet away from the intersection when he tried to shift to low gear. Such apparent discrepancies of course could have been considered by the jury.

There is another ground under which Pitts might have been held liable aside from any negligence on the part of Gibson. See *Brand* v. *Rorke,* 225 Ark. 309, 280 S. W. 2d 906. The facts in that case were somewhat similar in principle to the facts of the case under consideration. Appellant, Brand, was injured while riding in a car driven by appellee, Rorke. In appellant's complaint against Rorke it was alleged that the latter was driving an automobile without brakes which was the cause of her injuries. At the trial appellant testified that appellee was driving down a mountain highway when the brakes failed, etc. The trial court directed a verdict in favor of appellee. In reversing the trial court we made this statement:

"It is insisted by the appellee that this proof falls short of establishing negligence, since the mechanical defect might have arisen suddenly and without fault on Rorke's part. Even so it was not necessary for the plaintiff to anticipate and dis-

prove this possible explanation. By statute every motor vehicle must be equipped with adequate brakes. Ark. Stats. 1947, § 75-724. It has often been held that proof of the violation of such a safety measure is evidence of negligence. [Cases cited.] The appellant's testimony constituted substantial evidence to the effect that the statute had been violated; it was for the jury to say whether the defendant was guilty of negligence."

*Two,* appellants objected to several instructions given to the jury. It would serve no useful purpose to set out all these instructions and comment on each one of them. However, we have carefully examined each and find no reversible error. We deem it sufficient therefore to comment only on the principal objections raised.

Instruction No. 12 reads as follows:

"You are instructed that it is the duty of every person operating a motor vehicle upon a public street or highway to keep a lookout for other vehicles which may be upon the streets or highways, and to have his or her vehicle under such control as will enable him or her to check its speed or to stop if necessary in order to avoid injury or damage, where danger is reasonably to be anticipated or is apparent."

Appellants' objection to the above instruction is that it imposes an absolute duty on the driver to keep a lookout and to have his vehicle under control, etc. while the law requires only reasonable care. We cannot agree that the instruction, as given, constitutes reversible error when it is considered in connection with previous statements of this Court and with other instructions given by the court in this case. In *Livingston* v. *Baker,* 202 Ark. 1097, 155 S. W. 2d 340, we said:

"Criticism of this instruction is particularly directed to the language, 'When the driver of a motor vehicle sees danger ahead, or it is reasonably apparent if he is keeping a proper lookout, or if he is warned of approaching imminent danger,' then it

is his duty to bring his vehicle under control and to stop it if necessary to avoid the danger. We see no objection to this language when applied to the undisputed facts in this case or to the facts which the jury found by its verdict to be true, even though disputed.''

The above comment is indeed applicable to the facts here. Unquestionably Gibson was warned of ''approaching imminent danger'' when he saw the signal light at the second intersection turn red.

In the case of *Northwestern Casualty & Surety Co.* v. *Rose,* 185 Ark. 263, 46 S. W. 2d 796, where the issue was similar to the one here raised, we said:

"It is the well-settled rule that the duty rests upon the driver of an automobile to exercise ordinary care in its operation, and in the exercise of such care it is his duty to keep a constant lookout to avoid injury to others. This is particularly incumbent upon him when driving on the street of a city in order to avoid injury to pedestrians, as he should anticipate their presence upon such streets and their equal right to their use.''

From the above it is apparent that at least *two* duties rest upon the driver: one is the duty to exercise reasonable (or ordinary) care in operating a vehicle while the other is the duty to keep a proper lookout for the safety of others. Instruction No. 12 covered the latter duty only. Other instructions of the court correctly defined negligence and ordinary care as applied to Gibson in operating a vehicle on a street or highway.

The trial court gave Instruction No. 22 which deals with the question of damages for mental anguish. Appellants objected on the ground that ''it ignored this court's rule that damages for mental anguish can only be awarded for such anguish over and above normal mental anguish''. Granting that appellants' objection is sustained by *Peugh* v. *Oliger, Admx.,* 233 Ark. 281, 345 S. W. 2d 610, we do not agree that the suggested defect

in the given instruction calls for a reversal. We think it was cured by other instructions given to the jury. Instruction No. 21 given by the court told the jury that in order to recover damages for mental anguish it "must be more than the normal grief over the loss of a loved one". In addition, the court, in Instruction No. 1, told the jury it must consider all instructions as a whole.

*Three,* appellants here contend that the court erred in failing to give Instruction No. 17 requested by them, and set out in appellants' argument as follows:

> "You are instructed that a motorist, in a sudden emergency, and who is required to act quickly and acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence, provided he exercised, in the emergency, care of a reasonably prudent individual under like circumstances."

We find no error. First, because the court had already given Instruction No. 15A which we find correctly covered the same subject matter. Also, it appears that the instruction copied above omits a portion of the requested instruction which was refused by the court. The omitted portion appears to us to be argumentative and therefore objectionable. Anyway it was not necessary for the court to give both instructions.

*Four,* finally, it is urged that the judgments based on mental anguish are excessive. As stated, the jury gave Susan's mother $25,000 and her father $15,000. Appellants now ask us to reduce these judgments, but we are not persuaded to do so. In approaching this question we are reminded of what we said in the case of *J. Paul Smith Co.* v. *Tipton,* 237 Ark. 486, 374 S.W. 2d 176:

> ". . . there has not been and never will be devised a definite and satisfactory rule by which to determine the amount of money required to compensate parents for mental anguish."

We have recently been called on to consider the same question in the cases of *Tiner* v. *Tiner*, 238 Ark. 222, 379 S. W. 2d 425, and *Peugh* v. *Oliger, supra,* in which sizeable amounts were approved for mental anguish. In none of these cases was there shown more evidence of mental anguish than is shown here, particularly as applied to Mrs. Russell. Susan is pictured by several witnesses as a lovely girl, active in school and church affairs, and attached to her parents. Susan's mother said she went to pieces and had to go to work since she couldn't stay at home, that she was unable to work and had to leave town several times—but nothing helped. The nurse drew a touching picture of how Mrs. Russell acted when she visited the hospital, indicating excessive grief—this was continuous while the nurse was there. The extent to which Susan's death affected the father is indicated by the showing he was visibly upset while testifying—his face was contorted and it was hard for him to make audible answers. At times he covered his face with his hands.

It was within the province of the jury to fix the pecuniary remuneration to compensate the parents for their grief because of the death of Susan. We are not able to point to any satisfactory reason why we could or should, under the facts in this case, reduce the amounts fixed by the jury.

Affirmed.