Norman *v.* Gray.

5-3337 383 S. W. 2d 489

Opinion Delivered November 9, 1964.

Smith, Williams, Friday & Bowen and Wootton, Land & Matthews, for appellant.

McMath, Leatherman, Woods & Youngdahl and Richard W. Hobbs, for appellee.

Frank Holt, Associate Justice. The appellees, Mary Ellen Gray, administratrix of the estate of Martha Imogene Gray, deceased, and Lee Beavers, administratrix of the estate of Verona Beavers, deceased, brought separate actions against the appellants, William T. Norman and Better Built Homes, Inc. These actions, consolidated for trial, resulted from the deaths of appellees' two girls, each twelve years of age, who were killed instantly while riding a bicycle near their homes when they were struck by an automobile driven by appellant William T. Norman, an employee of appellant Better Built Homes, Inc.

A verdict was rendered by a jury awarding each of the appellees $35,000.00 against both of the appellants.

For reversal appellants rely upon seven points. They first argue that the court should have directed a verdict for the appellants at the conclusion of all the evidence. We cannot agree when we review the evidence in the light most favorable to the appellees as we must do on appeal. *Harkrider* v. *Cox,* 232 Ark. 165, 334 S. W. 2d 875. The case at bar was submitted to the jury upon the conflicting theories of negligence and contributory negligence as to how the accident occurred. It was within the province of the jury to believe appellees' theory and disbelieve appellants' version. Therefore, the only question we can consider is whether there is any substantial evidence to support the jury's determination of these issues. We will not disturb the finding of fact by a jury on conflicting evidence if there is any substantial evidence to support the jury's determination. *St. Louis-San Francisco R. Co.* v. *Bishop,* 182 Ark. 763, 33 S. W. 2d 383.

Appellees' evidence was to the effect that the twelve-year-old girls, while both were riding an unlighted bicycle on the shoulder of Highway No. 70 about six p.m., were struck from behind by a speeding automobile. The grandfather of one of the children testified that he went to the scene immediately following the accident and observed the position of the children's bodies and that early the next morning he measured distances with a tape measure from the point where their bodies were found by following a trail of blood. According to his testimony, the physical facts established that the point of impact was on the shoulder of the road 5 feet and 3 inches south of the edge of the blacktop pavement and 91 feet east of an intersection. Both the children and appellant Norman were traveling eastward. The physical facts further reflected that the vehicle carried the bicycle and the children's bodies 74 feet before appellant Norman's brakes became fully effective at a point south and near the center line of the highway; that from this point the skid marks indicated appellant's vehicle trav-

eled 241 feet in an arc from the center line to the north edge of the pavement and back to the center line; that as the vehicle veered back to the center line, the bodies of the girls were flung from the hood and windshield of the car to the north shoulder of the highway and came to rest, along with the bicycle, near each other; that one body skidded 92 feet on the pavement and an additional 30 feet on the north shoulder and the other body skidded 30 feet on the pavement and 9 feet on the shoulder. According to him, there was evidence of gouge marks from the bicycle on the pavement indicating the path of the car. He testified that before the continuous skid marks of the automobile began, he found irregular skid marks left by the bicycle tires. He found shattered glass beginning about 53 feet from the point of impact at regular intervals in the eastbound traffic lane to where the car came to rest. His testimony of the physical facts was corroborated in some respects.

According to appellant Norman's theory of the case, he was traveling 40 to 45 miles per hour as he proceeded through the intersection; that as he passed an oncoming car he put his lights on high beam and saw in his eastbound lane an object which was 175 to 200 feet ahead of him and about one-half to two feet from the shoulder of the road. He began to slow up and observed it was either one or two children on an unlighted bicycle; that he then locked his brakes and made a sharp turn to the left or into the westbound lane in order to go around the children; that they unexpectedly turned to their left and into his path where the right front fender of his car struck them at a point about 250 feet [instead of 91 feet as claimed by appellees] from the intersection; that the beginning of glass spray was found 350 feet from the intersection; that the bodies of the girls were carried on his hood and windshield and they were propelled from the car when he cut back sharply into his eastbound lane of the road. There was other evidence, direct and circumstantial, which tended to corroborate the appellant.

Where there are two conflicting versions of the cause of a collision or accident, it is within the province

of the jury to resolve the conflict or inconsistencies in the evidence. *Jonesboro Coca-Cola Bottling Co.* v. *Holt,* 194 Ark. 992, 110 S. W. 2d 535; *Schwam* v. *Reece,* 213 Ark. 431, 210 S. W. 2d 903; *Fields* v. *Freeman,* 177 Ark. 807, 8 S. W. 2d 436. It is true that in the case at bar the appellees relied largely upon physical facts and circumstances in establishing the allegations of their complaint. We have reiterated many times that physical facts can be more persuasive than statements by witnesses. *East Texas Motor Freight Lines Inc.* v. *Dennis,* 214 Ark. 87, 215 S. W. 2d 145. In *Pekin Wood Products Co.* v. *Mason,* 185 Ark. 166, 46 S. W. 2d 798, we said:

" * * * that a well connected train of circumstances is as cogent of the existence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony, and that any issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions."

See, also, *Phillips Motor Co.* v. *Price, Admx.,* 204 Ark. 827, 165 S. W. 2d 251; *Arkmo Lbr. Co.* v. *Luckett,* 201 Ark. 140, 143 S. W. 2d 1107.

In the case at bar the issue of appellants' negligence was properly submitted to the jury since there was substantial evidence to sustain its verdict in resolving the two conflicting theories.

Appellants contend in their next three points that there was no evidence to justify the court giving instructions on the duty of a driver (1) to keep a proper lookout, (2) to keep the vehicle under proper control, and (3) on the subject of speed. We think the court properly submitted these issues to the jury. Appellants argue that since the bicycle had no light or reflectors, appellant Norman had met the requirement to keep a proper lookout. We have often said that a violation of a traffic statute is only evidence of negligence. The unlighted bicycle was a proper matter for the consideration of the jury, however, as we said in *Duckworth* v. *Stephens,* 182 Ark. 161, 30 S. W. 2d 840:

"* * * the failure to attach lights to the buggy was a matter of proper consideration, but it did not relieve Duckworth from the duty of acting as a reasonable prudent person in the operation of his car and of keeping such lookout as prudence for his own safety and humanity for the safety of others would dictate."

Appellant Norman himself testified that he was 175 or 200 feet from the children on the bicycle when he first observed them in his traffic lane. There was evidence that this area was somewhat congested and that he had previously observed children playing in this vicinity. In *Self* v. *Kirkpatrick*, 194 Ark. 1014, 110 S. W. 2d 13, we said:

"Persons operating an automobile and seeing children ahead of them must exercise such care as a man of ordinary prudence would exercise under the circumstances."

It is appellees' version that the children were carried 74 feet from the point of impact before the beginning of skid marks from appellant's vehicle. According to appellees' evidence, it took appellant Norman 315 feet— 241 feet of which was a continuous skid—to bring his vehicle to a stop from the point of impact. Appellant Norman testified that at the time of the accident he was driving 40 to 45 miles per hour. He also testified that he left Hugo, Oklahoma about 3.20 P.M., a distance of 168 miles to the scene of the accident which occurred two hours and forty minutes later or about 6:00 P.M. He further testified that he made three or four brief stops in traveling this distance. There was testimony that appellant Norman stated on two different occasions that he didn't know what happened. When we consider the evidence in the case at bar relating to proper lookout, control, and speed, we are of the opinion that each of these was a proper issue for the jury to consider. *Craighead* v. *Missouri Pacific Transp. Co.*, 195 F. 2d 652; *Patterson* v. *Bell*, 204 Ark. 777, 164 S. W. 2d 902; *Black & White, Inc.* v. *Fisher*, 224 Ark. 688, 275 S. W. 2d 876.

Appellants next contend that the court erred in refusing to give their requested instruction on unavoidable accident. We think the court properly refused this instruction. In *Bennett* v. *Staten*, 229 Ark. 47, 313 S. W. 2d 232, we recognized that the issue of unavoidable accident is raised:

"* * * only when there is evidence tending to prove that the injury resulted from some cause other than the negligence of the parties."

See, also, *Itzkowitz* v. *P. H. Reubel*, 158 Ark. 454, 250 S. W. 535. It must be said that the deaths of these little girls would not have occurred unless somebody was negligent. Appellants alleged that the accident was caused by the negligence of the children and appellees asserted that the accident was caused by the negligence of appellant Norman. The court submitted these issues of negligence and contributory negligence to the jury under proper instructions. We are of the view there was no evidence in the case at bar that made a submissible issue to the jury on an unavoidable accident.

The appellants next argue that the court erred in refusing to give their instruction which recites that the rules of the road apply to riders of bicycles in the same manner as drivers of motor vehicles. We think that adequate instructions relating to the conduct of bicycle riders were given by the court. The court is not required to duplicate instructions on any subject. *Nuckols* v. *Flynn*, 228 Ark. 1106, 312 S. W. 2d 444.

The appellants' final contention is that the judgments of $35,000.00 awarded to each of the appellees are excessive. In the case at bar the court's instruction contained three elements of damage for the jury's consideration, namely, mental anguish, loss of services of the deceased children, and funeral expenses. After deducting the undisputed funeral expenses, approximately $34,000.00 remains covering the elements of mental anguish and loss of services. There was a general verdict so we do not know how much the jury allocated to each of these two elements of damage. *J. Paul Smith Co.* v.

*Tipton,* 237 Ark. 486, 374 S. W. 2d 176. The award of damages for mental anguish is most difficult to evaluate as was aptly said in *Winner* v. *Sharp,* 43 So. 2d 634.

"No other affliction so tortures and wears down the physical and nervous system. Psychosomatic illness of a serious nature may follow. The emotions may be unstrung, the nerves put on edge and the end effect may be a period in a rest home, a mental hospital, serious physical derangement and sometimes death."

In the case at bar both little girls were healthy, talented, and industrious. Imogene Gray was a good student in conduct and grades. She was a majorette and particularly talented in art. Verona Beavers was also a good student and possessed unusual musical talents. She performed in talent shows at her school and was also a member of the choir in her church. Both mothers required medical attention because of their grief. Mrs. Beavers was described as "a nervous wreck." She had lost weight and suffered a change in personality. Mrs. Gray had lost her husband after an extended illness only nine days before this accident. Imogene was the only child she had left in her home. There was evidence that as a result of the death of Imogene, Mrs. Gray was suffering from a "very bad mental and physical condition."

In 15 Am. Jur., Damages, § 602, it is said:

"Mental anguish from a pecuniary standard, is incapable of definite calculation. The law furnishes no definite rule or standard by which such suffering may be valued or compensated for in money or which will afford a certain basis upon which damages therefor can be estimated. The amount to be awarded in any particular case necessarily, therefore, rests in the discretion of the jury, subject to review as in other cases. The difficulty in measuring damages of this kind, moreover, should not preclude their recovery in a proper case." See, also, *International Harvester* v. *Land,* 234 Ark. 682, 354 S. W. 2d 13; *Tiner* v. *Tiner,* 238 Ark. 22, 379 S. W. 2d 425; and *Pitts* v. *Greene,* 238 Ark. 438, 382 S. W. 2d

904, where we approved substantial verdicts on the element of mental anguish alone.

Appellants argue that there is little or no proof on loss of services. There was proof that these little girls dutifully assisted their widowed mothers. Imogene was most helpful to her mother in nursing her ailing father. It is true that a twelve-year-old girl is incapable of earning very much of value, but the jury is permitted to indulge in conjecture on the future value of such services. In *Missouri Pacific RR Co.* v. *Maxwell*, 194 Ark. 938, 109 S. W. 2d 1254, we approved the following instruction:

"You are instructed that where damages are claimed for the death of a child incapable of earning anything or rendering services of any value, the value of its probable future service to the parent during its minority is a matter of conjecture and may be determined by the jury without the testimony of witnesses."

In the case at bar these verdicts include damages for "pecuniary injuries" and "mental anguish." We cannot say, under the facts in this case, that the awards fixed by the jury should be reduced by us.

The judgment is affirmed.