PETRUS CHRYSLER-PLYMOUTH *v.*
Leonard DAVIS and Joyce DAVIS

84-89                                      671 S.W.2d 749

Supreme Court of Arkansas
Opinion delivered July 9, 1984

*Frank W. Booth,* for appellant.

*Martin, Vater & Karr,* by: *Charles Karr,* for appellees.

P. A. HOLLINGSWORTH, Justice. The appellees were

awarded compensatory and punitive damages against the appellant, Petrus Chrysler-Plymouth, Inc., (Petrus) after a fire destroyed a 1975 Dodge Ramcharger purchased by the appellees from the appellant. Petrus raises seven issues in its appeal from the jury's verdict. This appeal is before us under Sup. Ct. R. 29 (1) (o) as it presents questions in the law of torts and contracts. We affirm.

On June 9, 1979, Mr. and Mrs. Davis, the appellees, test drove the Ramcharger. As it was being driven by the appellees, it began to smoke from underneath the dash. When they returned it to the lot, they told the salesman what had happened. They then negotiated an agreement and signed a buyer's order dated June 9. Under the agreement, Petrus was to "repair wiring" "adjust clutch" and "fix hood latch."

Two days later, on June 11, Petrus contracted with Wimberly's Gulf Service Center for the repair work. Ray Wimberly testified at trial that he told Jean Dolan, who works for Petrus, that the vehicle's wiring harness needed to be repaired or replaced. He also testified that she told him they were only going to show the vehicle and she wanted him to get the air conditioner and the radio working. He stated that she told him that if someone bought it and the wiring still gave them trouble they could bring it back and fix it at another time. Mr. Wimberly replaced the switch and made the repairs on the air conditioner wires, but he did not replace the wiring harness.

Mr. Davis returned to Petrus to take possession of the vehicle on June 11. It had not been repaired so he did not take delivery, but returned on June 13. The clutch still had not been repaired, but he testified that the salesman told him the wiring harness had been replaced. Petrus gave Mr. Davis a $100 check for him to use to repair the clutch. Mr. Davis signed a second buyer's order dated June 11, 1979, which contained the handwritten notations, "as is" and "paid $100.00 for repair of clutch."

On June 15, while Mrs. Davis was driving the Ramcharger, it started smoking from underneath the dash,

caught fire, and was heavily damaged.

The Davises brought suit when they were unable to resolve the matter with Petrus. A jury awarded them $10,700 for compensatory damages and $5,000 for punitive damages.

On appeal, the appellant argues that: (1) the trial court erred in failing to grant their motion for directed verdict; (2) the trial court erred in allowing appellees to introduce oral testimony to vary and contradict the terms of the written contract between the parties; (3) the trial court erred in instructing the jury on the question of breach of warranty; (4) the trial court erred in giving the damage instruction because there was no evidence of probable cause; (5) the trial court erred in instructing the jury on punitive damages; (6) the trial court erred in directing a verdict for the appellees on the question of abuse of process; and (7) there was no substantial evidence to support the verdict of the jury. We find no merit in any of the appellant's contentions.

The crux of the appellant's first argument is that the trial court should have granted their motion for a directed verdict because of the appellees' failure to prove the existence of a defect and that the defect caused the damage. There was conflicting testimony as to the probability that the cause of the smoke coming out from under the dashboard on the test drive was the same as the cause of the fire that subsequently destroyed the vehicle. However, we review the evidence in the light most favorable to the appellees. *Norman* v. *Gray*, 238 Ark. 617, 383 S.W.2d 489 (1964). Since it is within the province of the jury to believe the appellees' theory over the appellant's version, we only consider whether there is any substantial evidence to support the jury's findings. *Id.*

We have adopted the doctrine of strict liability in torts in products liability cases. See Ark. Stat. Ann. § 85-2-318.2 (Supp. 1983). This however, does not change the burden of proof as to the existence of a defect in a product. *Southern Co.* v. *Graham Drive-In*, 271 Ark. 223, 607 S.W.2d 677 (1980). Such proof may be by circumstantial evidence. *Id.* In *Southern Co.,* we stated:

It is true, as appellant argues, that liability cannot be based on mere conjecture and guess. (citation omitted). However, in the absence of direct proof of a specific defect, it is sufficient if a plaintiff negates other possible causes of failure of the product, not attributable to the defendant, and thus raised a reasonable inference that the defendant as argues here, is responsible for the defect.

Futhermore, in *Harrell Motors, Inc. et al* v. *Flancery,* 272 Ark. 105, 612 S.W.2d 727 (1981), we stated that:

proof of the specific defect is not required when common experience tells us that the accident would not have occurred in the absence of a defect. In such a situation there is an inference the product is defective, and it is up to the manufacturer to go forward with the evidence.

Here, we find there was ample evidence from which the jury could have inferred that the vehicle was defective when sold to the appellees, and that that defect ultimately resulted in the fire which destroyed the vehicle.

The appellant's second argument is that the trial court erred by allowing the appellee, Mr. Davis, to tesify about the meaning of the notation "as is" which was on the contract. Mr. Davis testified that "as is" referred to a second hand-written notation which appeared immediately below and which read "Paid $100.00 for repair of clutch." The appellant maintains that the two terms were two separate thoughts and were in no way related to each other. Therefore, the appellant argues that Mr. Davis' testimony was introduced to contradict or vary the terms of the written contract, which is contrary to the parol evidence rule.

We have held that the parol evidence rule requires the exclusion of all prior or contemporaneous, oral or written evidence that would add to or vary the parties' integrated written contract, which is unambiguous. *Walt Bennett Ford, Inc.* v. *Dyer,* 4 Ark. App. 354, 631 S.W.2d 312 (1982). In *Pollock* v. *McAlester Fuel Co.,* 215 Ark. 842, 223 S.W.2d 813

(1949), we held that:

> evidence of previous negotiations between the parties is admissible to prove the meaning of written words, not by showing that the parties intended them to mean something different from what other persons at the same time and place and dealing with the same subject matter would attach to them, but to prove that the parties were dealing in regard to a matter or to secure an object, or under circumstances where local usage would give a particular meaning to the language; or in case the local meaning is ambiguous, to show that the parties attached one appropriate meaning to their words, rather than another equally appropriate meaning.

Here, the words "as is" and the reference to the payment for the clutch appear in the same portion of the contract and were added to the contract at the request of the appellee, Mr. Davis. His testimony as to the meaning of the two terms does not vary or contradict the written contract but merely explains the relation between the two terms. The evidence was admissible.

The appellant's third and fourth arguments are essentially renewed attacks on the sufficiency of the evidence. Since we already dealt with that question in our response to the first issue, we will not discuss it again. Furthermore, the appellant cites no case law to support his position and essentially reiterates the same argument. We held in *Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977), that we would not consider "assignments of error on appeal that are unsupported by convincing argument or authority, unless it is apparent without further research that they are well taken."

The appellant next argues that the trial court erred in giving a punitive damages instruction because there is no evidence upon which to base a finding that the appellant's conduct would naturally or probably result in injury. We have held that commercial fraud requires punishment as a deterrent and that " if there is evidence tending to show that

the tortfeasor intentionally performed a deliberate act with the intention of misleading a prospective purchaser about a material matter to his injury, it is proper to permit the jury to consider awarding punitive damages." *Moore Ford Co.* v. *Smith,* 270 Ark. 340, 604 S.W.2d 943 (1980); *Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 479 S.W.2d 518 (1972). There was evidence that appellant knew the wiring in the automobile was defective, and the appellant was told that the wiring should be replaced. Appellant took another course of conduct that was a misrepresentation and caused injury to the appellees.

The appellant's sixth contention is that the trial court erred in directing a verdict for the appellees on the question of abuse of process. In the case at bar, there was absolutely no evidence that appellees did anything improper in connection with this lawsuit, either before it was instituted or after.

The appellant's final point once again goes to the sufficiency of the evidence to support the verdict of the jury. We have already dealt with that issue, and affirm the trial court.

Affirmed.